[EDITORS' NOTE: THIS OPINION IS DEPUBLISHED UPON GRANTING OF PETITION FOR REVIEW. THE OPINION APPEARS BELOW WITH A GRAY BACKGROUND.]
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1017 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1018 
 OPINION
 I. INTRODUCTION A jury found Karl Anthony Govan guilty of four counts of residential burglary (Pen. Code, § 459)[1] (counts 1-4). The trial court sentenced Govan to a total term of six years in prison, including an upper term of six years on count 1.
 On appeal, Govan claims the People failed to present sufficient evidence to corroborate his accomplice's statement to the police that Govan aided in the commission of the burglaries charged in counts 1 through 3. In addition, Govan claims the trial court erred in refusing to instruct the jury on all counts as to the lesser related offense of receiving stolen property. Finally, Govan claims the trial court violated his federal constitutional rights under Cunningham v.California (2007) 549 U.S. ___ [166 L.Ed.2d 856,127 S.Ct. 856] (Cunningham) in imposing an upper term on count 1 on the basis of. facts not found by the jury.[2]
 We affirm the judgment as to Govan's convictions. We conclude the trial court erred under Cunningham in imposing an upper term on count 1. We vacate Govan's sentence and remand for resentencing. *Page 1019 
 II. FACTUAL AND PROCEDURAL BACKGROUND
A. Factual background
 1. The People's evidence
 On April 18, 2005, at approximately 11:15 a.m., Miriam McAllister returned to her home in Murrieta. She discovered that her front door had been damaged. When she went to her bedroom, she saw that the drawers to her jewelry box were open and that some of the drawers had been removed. A $2 bill that had been in one of the drawers was missing. There was a pillowcase on the floor that contained the drawers from her jewelry box and the missing jewelry.
 Also on April 18, at approximately 1:15 p.m., Elton Gaston, Jr., arrived at his home in Murrieta. Gaston discovered that two video game players were missing, along with two pillowcases.
 That same day, Eddie Barba arrived at his house in Moreno Valley at approximately 1:30 p.m. He had been out of his home for only approximately 15 to 20 minutes. He discovered that several items were missing, including a coat, a jewelry box, and a video game player. Two pillowcases were also missing.
 Don Mays lived across the street from Louise Black-Robinson's home on Dickinson Road in Moreno Valley. At approximately 1:00 p.m. on April 18, Mays saw a Black male in the driver's seat of a red car talking to a man later identified as David Smith. Smith was standing outside the car. Mays saw Smith approach the front of the Black-Robinson residence and ring the doorbell. Shortly thereafter, Mays saw Smith jump over a fence to the residence. Mays called the police at 1:23 p.m.
 Riverside Sheriff's Deputy Mario Chavez responded to Mays's call. As he approached the Black-Robinson residence, he noticed that a door to the garage was open and that it appeared to have been kicked in. Chavez called for backup and waited outside the house.
 Meanwhile, knowing that the burglary of his home had taken place only minutes earlier, Barba drove around the neighborhood in an attempt to find the perpetrators. Barba saw Deputy Chavez outside the Black-Robinson residence with his gun drawn. After speaking with Deputy Chavez briefly, Barba drove around to the back of the Black-Robinson home. Barba could *Page 1020 see Smith inside the residence talking on a cellular telephone. Barba saw two Black males in a small red Dodge pull up next to the house. Govan was the passenger. Govan got out of the car and talked to Smith, who had come out of the house.
 While waiting for more officers to arrive, Deputy Chavez saw a red Dodge parked near the house. Chavez saw a Black male in the driver's seat of the car, and Govan standing outside of the car, facing the car. Deputy Chavez observed Smith climbing the fence from the house. Govan placed a pillow-case that appeared to be half full of items in the car. Barba heard Govan yelling to Smith that a police officer was on the scene. As Govan opened the front passenger door of the car, Deputy Chavez yelled, "Freeze!" Govan got into the red Dodge and the car sped off. Smith attempted to flee on foot. Deputy Chavez chased Smith, caught him and arrested him. Officers found a $2 bill in Smith's possession.
 Meanwhile, Michael Hoover, who had been driving by the scene, saw Govan get into the red Dodge. Hoover followed the red Dodge and telephoned 911. Barba also followed the red Dodge in his car. Both Barba and Hoover followed the car to a nearby church, where Govan got out of the red Dodge.
 Riverside Sheriffs Deputy Oscar Garcia arrived at the church and arrested Govan. Police officers searched the red Dodge. Inside, police found items that had been stolen from the Gastons, the Barbas, and the Black-Robinsons. Approximately half of the stolen property was in the back seat on the passenger's side, and the rest was in the trunk.
 In a statement he made to police on the day after his arrest, Smith said that Govan and another male had helped him burglarize three homes on April 18. Smith acknowledged that two of the homes were located in Murrieta and that police had interrupted a third burglary at a house in Moreno Valley. Smith told police that Govan was aware at the time that Smith was committing burglaries. Smith explained that the driver and Govan would drop Smith off at the house Smith intended to burglarize, and that when Smith had finished burglarizing the house, he would telephone Govan on a cellular telephone. The driver and Govan would then pick up Smith. Smith stated that he was planning to pay Govan $20 for assisting in the burglaries.
 At Govan's trial, Smith testified that he committed the four burglaries. Smith testified that he had pled guilty to all four burglaries and that he had been sentenced to prison for the offenses. Smith claimed that he had planned to commit the burglaries solely with the assistance of a getaway driver, whom he knew only by the nickname "Tec-9." Smith testified that Tec-9 had picked *Page 1021 him up in a red Dodge at 7:00 a.m. on the morning of April 18. Smith stated that he and Tec-9 burglarized three homes that day, without Govan. Smith said that the first time he saw Govan was at the burglary in Moreno Valley, which the police interrupted.
 Smith testified that his original statement to police was inaccurate concerning Govan's presence and his assistance with the other burglaries. Smith claimed he was scared, nervous, and confused by the officers' questioning at the time he made the statements implicating Govan.
 2. Defense evidence
 Govan testified that on the day in question, he had taken the wrong bus while attempting to travel to a business to apply for a job. Govan got off the bus and was standing in front of a church when an acquaintance Govan knew only as "Ted,"[3] drove up in a red car and offered to give Govan a ride. Ted told Govan that he would have to pick up someone else along the way. Govan accepted the offer and got into the car. Govan did not know that any burglaries had been committed and he did not notice any pillowcases in the car.
 Ted drove to a house where Govan saw Smith standing near a fence. Ted instructed Govan to help Smith. Govan got out of the car and approached Smith. Smith handed Govan a laptop case and one or two pillowcases, over the fence. Govan believed Smith was handing him Smith's property. As Govan was placing the items in the car, he heard someone yell, "Freeze." Ted sped off while Govan was only partially in the car.
 As Ted drove away, Govan asked Ted what he and Smith had done. Ted did not tell Govan what they had done. Govan continually asked Ted to pull the car over. Ted eventually stopped the car in the parking lot of the church where Ted had initially picked up Govan. Ted walked away. Govan stayed on the church grounds and asked a student who was spraying off some tables if he needed help.
 3. The People's rebuttal evidence
 Deputy Mario Chavez testified that he interviewed Govan after his arrest on the day of the burglaries. Govan denied ever having been in the red Dodge that was used in the burglaries. *Page 1022 
B. Procedural history
 The People charged Govan with four counts of burglary (§ 459) for the burglaries of the McAllister residence (count 1), the Gaston residence (count 2), the Barba residence (count 3), and the Black-Robinson residence (count 4). A jury found Govan guilty on all counts. The trial court sentenced Govan to a total term of six years in prison.
 III. DISCUSSION
A. The People presented sufficient evidence to corroborate Smith's statement to the police implicating Govan in the burglaries charged in counts 1 through 3
 Govan claims the People failed to present sufficient evidence to corroborate accomplice Smith's statement to the police implicating Govan in the commission of the burglaries charged in counts 1 through 3.
 1. Standard of review
 "The trier of fact's determination on the issue of corroboration is binding on the reviewing court unless the corroborating evidence should not have been admitted or does not reasonably tend to connect the defendant with the commission of the crime. [Citation.]" (People v. McDermott (2002)28 Cal.4th 946, 986 [123 Cal.Rptr.2d 654,51 P.3d 874].)
 2. Governing law
 Section 1111 provides:
 "A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.
 "An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."
 In People v. Narvaez (2002)104 Cal.App.4th 1295 [128 Cal.Rptr.2d 899] (Narvaez), this court considered the corroboration requirement contained in *Page 1023 section 1111. In Narvaez, Christopher Mendoza, an accomplice of the defendants, Douglas Narvaez and Adrian Flores, testified at trial that he had served as the getaway driver during a robbery. (Narvaez, supra,104 Cal.App.4th at pp. 1300-1301.) On appeal, the defendants claimed there was insufficient evidence to corroborate Mendoza's testimony. (Id. at p. 1303.)
 The Narvaez court outlined the corroboration requirement of section 1111: "Evidence that sufficiently corroborates an accomplice's testimony `"`must tend to implicate the defendant and therefore must relate to some act or fact which is an element of the crime[,] but it is not necessary that the corroborative evidence be sufficient in itself to establish every element of the offense charged.' [Citation.]" [Citation.]' [Citation.] The evidence necessary to corroborate accomplice testimony need only be slight, such that it would be entitled to little consideration standing alone. [Citation.] It is enough that the corroborative evidence tends to connect defendant with the crime in a way that may reasonably satisfy a jury that the accomplice is telling the truth. [Citation.] Corroborative evidence may be entirely circumstantial. [Citation.]" (Narvaez, supra,104 Cal.App.4th at p. 1303.)
 The Narvaez court stated, "It is established that `[t]he possession of recently stolen property is sufficient to support corroboration for an accomplice's testimony.' [Citations.]" (Narvaez, supra,104 Cal.App.4th at p. 1304.) The court noted that the People presented evidence in that case that the defendants were in possession of jewelry that had been stolen in the robbery: "In photographs taken the day after the robbery, Lopez, Douglas Narvaez's girlfriend, was wearing one of Kamil's stolen bracelets. When Douglas Narvaez and Lopez were arrested a week later, she had three pieces of Kamil's stolen jewelry in her possession. When Flores was arrested on April 30, he was wearing jewelry stolen during the robbery." (Id. at p. 1303.)
 The Narvaez court said it could "find no legal reason why the evidence is insufficient to corroborate Mendoza's testimony." (Narvaez, supra,104 Cal.App.4th at p. 1304.)
 3. There was sufficient evidence corroborating Smith's testimony
 Govan was a passenger in the red Dodge that was used during the burglaries charged in counts 1 through 3.[4]
The red Dodge contained property *Page 1024 that had been stolen during the Gatson, Barba, and Black-Robinson burglaries. Much of the stolen property was in pillowcases in the back seat of the car. Govan's presence in the car with the recently stolen property corroborated Smith's statements implicating Govan. (Narvaez, supra,104 Cal.App.4th at p. 1304.)
 Govan's actions in alerting Smith to the presence of the police and fleeing in the red Dodge during the burglary that the police interrupted (count 4) also corroborates Smith's testimony. Evidence that Govan placed a pillowcase full of items taken during the interrupted burglary into the getaway car also corroborates Smith's testimony.
 We conclude that the People presented sufficient evidence to corroborate Smith's statement to the police implicating Govan in the burglaries charged in counts 1 through 3.
B. The trial court did not err in refusing to instruct the jury regarding the lesser related offense of receiving stolen property
 Govan claims the trial court erred in failing to instruct the jury regarding the lesser related offense of receiving stolen property and that this error violated his right to present a defense, under the United States Constitution.[5]
We apply the de novo standard of review to Govan's claim. (SeePeople v. Posey (2004) 32 Cal.4th 193, 218
[8 Cal.Rptr.3d 551, 82 P.3d 755] ["The independent or de novo standard of review is applicable in assessing whether instructions correctly state the law"].)
 1. Factual and procedural background
 Govan was charged in counts 1 through 4 with residential burglary. At trial, Govan testified that he was unaware that the burglaries charged in counts 1 through 3 had taken place. Govan further testified that he did not see any of the stolen property taken from these burglaries in the car in which he was riding as a passenger. With respect to the burglary charged in count 4, Govan testified that he did not know that Smith had just burglarized a house and was handing Govan stolen property. Govan testified that he thought Smith was handing him Smith's own property. *Page 1025 
 During a conference on jury instructions, defense counsel requested that the court instruct the jury on the lesser related offense of receiving stolen property. The People objected to the giving of this instruction. The trial court refused to give the instruction, noting that it was undisputed that receiving stolen property is not a lesser included offense of burglary. The court also stated that it would be improper to instruct the jury, over the prosecutor's objection, regarding the offense of receiving stolen property.
 2. Governing law
 In Hopkins v. Reeves (1998) 524 U.S. 88,90-91 [141 L.Ed.2d 76, 118 S.Ct. 1895] (Hopkins), the United States Supreme Court considered whether state trial courts are required to "instruct juries on offenses that are not lesser included offenses of the charged crime under state law." The Hopkins court concluded that, "such instructions are not constitutionally required." (Id. at p. 91.) The court reasoned: "Almost all States . . . provide instructions only on those offenses that have been deemed to constitute lesser included offenses of the charged crime. [Citation and fn. omitted.] We have never suggested that the Constitution requires anything more. The Court of Appeals in this case, however, required in effect that States create lesser included offenses to all capital crimes, by requiring that an instruction be given on some other offense — what could be called a `lesser related offense' — when no lesser included offense exists. Such a requirement is not only unprecedented, but also unworkable." (Id. at pp. 96-97.)
 In People v. Valentine (2006)143 Cal.App.4th 1383, 1386-1387 [49 Cal.Rptr.3d 948] (Valentine), the court outlined the differences between a trial court's duties with respect to jury instructions on lesser included offenses and lesser related offenses under California law: "`[T]he trial court normally must, even in the absence of a request, instruct on general principles of law that are closely and openly connected to the facts and that are necessary for the jury's understanding of the case.' [Citation.] The obligation to instruct includes giving instructions on lesser included offenses when warranted by substantial evidence. [Citation.] However, a defendant has no right to instructions on lesser related offenses even if he requests the instruction and it would have been supported by substantial evidence. [Citation.] California law does not permit a court to instruct on an uncharged lesser related crime unless agreed to by the prosecution. [Citation.]"
 3. Govan had no right to an instruction on the lesser related offense of receiving stolen property
Hopkins makes clear that a defendant has no federal constitutional right to a jury instruction on a lesser related offense. The Hopkins court phrased its *Page 1026 holding in broad terms, stating that such an instruction is not "constitutionally required." (Hopkins,supra, 524 U.S. at p. 91.) Accordingly, the trial court did not violate Govan's federal constitutional rights by refusing to instruct the jury on the lesser related offense of receiving stolen property. (Ibid.; accord, Valentine,supra, 143 Cal.App.4th at p. 1388 [rejecting argument that trial court's refusal to instruct on lesser related offense amounted to a failure to instruct on a defense theory because "the offense of receiving stolen property is not adefense to robbery; rather, it is a theory of criminal liability based on a different offense"].)
 Govan argues that the Hopkins court did not address "head-on" whether a trial court's refusal to provide a lesser related offense instruction might violate a defendant's federal constitutional right to present a defense. Even assuming for the sake of argument that, notwithstandingHopkins's broad holding, a defendant's federal constitutional right to present a defense could be implicated by a trial court's refusal to provide such an instruction in some circumstances, it is clear that Govan's right to present a defense was not violated in this case. The elements of receiving stolen property are: (1) stolen property; (2) knowledge thatthe property was stolen; and (3) possession of the stolen property. (People v. Land (1994)30 Cal.App.4th 220, 223 [35 Cal.Rptr.2d 544].) Govan denied any knowledge of the burglaries or the existence of stolen property. Thus, Govan did not present any evidence that he was guilty of receiving stolen property. Accordingly, the trial court did not violate Govan's right to present a defense by refusing to instruct the jury on the lesser related offense of receiving stolen property.
C. The trial court committed reversible error under Cunningham, supra, 549 U.S. ___ [127 S.Ct. 856] in sentencing Govan
 Govan claims the trial court committed reversible error in sentencing him to an upper term of six years on count 1 on the basis of facts not found by the jury.
 1. Factual and procedural background
 In November 2005, the probation officer filed a probation report with the court. In her report, the probation officer reviewed Govan's criminal record. The probation officer stated in the report that Govan had suffered a 1991 conviction for loitering around a school (former § 653g), a 1996 conviction for driving under the influence (Veh. Code, §23152, subd. (a)), a 1997 conviction for carrying a loaded firearm (§ 12031, subd. (a)), and a 2003 conviction for unlawfully taking a vehicle (Veh. Code, § 10851, subd. (a)).
 With respect to circumstances in aggravation and mitigation, the probation officer noted that the manner in which the instant crime was carried out *Page 1027 indicated planning, sophistication, or professionalism (former Cal. Rules of Court, rule 4.421(a)),[6] that Govan's prior convictions as an adult were numerous or of increasing seriousness (rule 4.421(b)(2)), that Govan was on probation at the time he committed the current offenses (rule 4.421(b)(4)), and that Govan's prior performance on probation had been unsatisfactory (rule 4.421(b)(5)). While the probation officer found no circumstances in mitigation, she wrote in her report, "in considering the factors of aggravation and mitigation, the middle term of incarceration could be justified."
 The probation report indicated that codefendant Smith had pled guilty to four felony counts of first degree burglary (§ 459) and that he had been sentenced to six years in prison.
 At the outset of Govan's sentencing hearing, the trial court commented that prior to trial, the court had indicated that it would be willing to sentence Govan to six years in prison if he were to plead guilty, in light of codefendant Smith's six-year sentence. The court indicated that it still considered six years an appropriate sentence, and that it was the court's intention to sentence Govan to an aggravated term of six years on one of the counts, and to order that the sentences on the other counts run concurrently with the principal term.
 Defense counsel responded, "I don't know that you could give him six years, give him [the] upper term on anything . . . with Blakely [Blakely v. Washington (2004)542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531]]." The trial court responded that it believed the California Supreme Court had determined that Blakely did not apply to California's sentencing structure.
 Defense counsel argued that imposing the midterm of four years on one count and ordering the other sentences to run concurrently, "would be plenty of punishment for his minor role in these crimes." The prosecutor requested that the court impose a sentence greater than the six-year sentence Smith had received. Among the factors the prosecutor argued supported a lengthier sentence for Govan were that he was nearly twice Smith's age, and that Smith had admitted responsibility at an early stage in the proceedings. The prosecutor requested that the court impose the upper term on the principal term, and order that the remainder of the counts run consecutively.
 After hearing further argument and commenting on the arguments of defense counsel and the prosecutor, the trial court stated that it was the court's intention to impose a six-year term in prison. With respect to *Page 1028 aggravating factors the court stated: "The manner in which the crime was carried out indicates planning, sophistication, and professionalism. The defendant's prior adult convictions are of increasing seriousness. The defendant was on probation when the crimes were committed and his performance on probation was unsatisfactory." The court also found that there were no factors in mitigation, and thus, that the factors in aggravation outweighed those in mitigation.
 The trial court sentenced Govan to the upper term of six years on count 1, and to 16 months each on counts 2 through 4. The court ordered that the sentences on counts 2through 4 be served concurrently with the sentence oncount 1.
 Govan claimed in his opening brief on appeal that the trial court violated his constitutional rights underBlakely in sentencing him to an upper term on the basis of facts not found by the jury. However, Govan conceded that his claim was at that time foreclosed by the California Supreme Court's decision in People v. Black (2005)35 Cal.4th 1238 [29 Cal.Rptr.3d 740, 113 P.3d 534] (Black), certiorari granted, judgment vacated, and cause remandedsub nom. (Black v. California (2007) ___ U.S. ___ [167 L.Ed.2d 36, 127 S.Ct. 1210].) While Govan's appeal was pending, the United States Supreme Court issued its opinion inCunningham, which abrogated Black. In view of the Cunningham decision, we requested supplemental briefing regarding the effect of Cunningham on the sentence imposed in this case.
 2. Governing law
 In Cunningham, supra, 549 U.S. ___ [127 S.Ct. 856], the United States Supreme Court held that the imposition of an upper term sentence under California's former determinate sentencing law,[7] based on neither a prior conviction nor facts found by the jury or admitted by the defendant, violates the Sixth and Fourteenth Amendments of the United States Constitution: "California's determinate sentencing law (DSL) assigns to the trial judge, not to the jury, authority to find the facts that expose a defendant to an elevated `upper term' sentence. The facts so found are neither inherent in the jury's verdict nor embraced by the defendant's plea, and they need only be established by a preponderance of the evidence, not beyond a reasonable doubt. The question presented is whether the DSL, by placing sentence-elevating factfinding within the judge's province, violates a defendant's right to trial by jury safeguarded by the Sixth and Fourteenth Amendments. We hold that it does." (Cunningham, supra, 549 U.S. ___ [127 S.Ct. at p. 860].) *Page 1029 
 The Cunningham court reasoned: "As this Court's decisions instruct, the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant. Apprendi v. New Jersey,530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] (2000); Ringv. Arizona, 536 U.S. 584 [153 L.Ed.2d 556,122 S.Ct. 2428] (2002); Blakely v. Washington[, supra,]542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531]; United Statesv. Booker, 543 U.S. 220 [160 L.Ed.2d 621,125 S.Ct. 738] (2005). `[T]he relevant "statutory maximum,"' this Court has clarified, `is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.'Blakely, 542 U.S., at 303-304 [124 S.Ct. 2531] (emphasis in original)." (Cunningham, supra, 549 U.S. at p. ___ [127 S.Ct. at p. 860].)
 The Cunningham court reversed the defendant's upper term sentence because "the four-year elevation based on judicial factfinding denied petitioner his right to a jury trial." (Cunningham, supra, 549 U.S. at p. ___ [127 S.Ct. at p. 860].)
 3. Govan did not forfeit his claim
 The People claim Govan forfeited his claim by failing to "object under Apprendi, Blakely, or the right to a jury trial." Defense counsel raised aBlakely objection at sentencing. In response, the trial court stated that Blakely did not apply to California's sentencing structure, implicitly referring to the California Supreme Court's decision in Black. Govan clearly did not forfeit his claim.
 4. The trial court committed reversible error under Cunningham in imposing a sentence that exceeds the middle term
 In this case, as in Cunningham, the trial court imposed an upper term sentence based on facts that were neither found by the jury nor admitted by Govan. (SeeCunningham, supra, 549 U.S. at p. ____ [127 S.Ct. at p. 860].) We reject the People's arguments, raised in their supplemental brief, that we may nevertheless affirm Govan's sentence.
 a. None of the aggravating factors on which the trial court relied is a constitutionally permissible ground for exceeding the statutory maximum
 The People claim it was permissible for the trial court to rely on its findings that Govan's prior convictions were of increasing seriousness, that *Page 1030 he was on probation at the time he committed the present offenses, and that his performance on probation was unsatisfactory, in imposing the upper term on count 1. The People note that under Almendarez-Torres v.United States (1998) 523 U.S. 224 [140 L.Ed.2d 350,118 S.Ct. 1219] (Almendarez-Torres), a court may impose a sentence that exceeds the statutory maximum on the basis of a defendant's prior conviction, and contend that courts have construed the "Almendarez-Torres exception" to apply broadly, encompassing more than the mere fact of a prior conviction. Specifically, the People maintain thatAlmendarez-Torres applies to the "recidivism factors" upon which the trial court relied in imposing an upper term sentence in this case.
 We acknowledge that, prior toCunningham, courts, including the California Supreme Court, had construed the Almendarez-Torres exception to apply to more than the mere the fact of a prior conviction. (See, e.g., People v. Thomas (2001)91 Cal.App.4th 212, 221 [110 Cal.Rptr.2d 571] [agreeing with "courts [that] have held that no jury trial right exists on matters involving the more broadly framed issue of `recidivism'"]; People v. McGee (2006) 38 Cal.4th 682,708-709 [42 Cal.Rptr.3d 899, 133 P.3d 1054] [concluding Court of Appeal erred in "narrowly constru[ing] theAlmendarez-Torres exception for recidivist conduct as preserved by Apprendi"]; accord, Black, supra,35 Cal.4th at p. 1269 [construing Apprendi and its progeny only to apply to "offense-based facts" (cone. dis. opn of Kennard, J.)].)
 However, in Cunningham, the United States Supreme Court clarified the narrow scope of theAlmendarez-Torres exception, and rejected the notion that recidivism related factors pertaining to a defendant need not be proven to a jury. In his dissent in Cunningham, Justice Kennedy wrote: "The Court could distinguish between sentencing enhancements based on the nature of the offense, where the Apprendi principle would apply, and sentencing enhancements based on the nature of the offender, where it would not. California attempted to make this initial distinction. Compare Cal. Rule of Court 4.421(a) (Criminal Cases) (West 2006) (listing aggravating `[f]acts relating to the crime'), with Rule 4.421(b) (listing aggravating `[f]acts relating to the defendant'). The Court should not foreclose its efforts." (Cunningham, supra, 549 U.S. at p. ____ [127 S.Ct. at p. 872] (dis. opn. of Kennedy, J.).)
 Nearly all of the "facts relating to the defendant" that Justice Kennedy mentions, to which rule 4.421(b) refers, are recidivism related factors. Rule 4.421(b) provides:
 "Facts relating to the defendant include the fact that:
 "(1) The defendant has engaged in violent conduct that indicates a serious danger to society; *Page 1031 
 "(2) The defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness;
 "(3) The defendant has served a prior prison term;
 "(4) The defendant was on probation or parole when the crime was committed; and
 "(5) The defendant's prior performance on probation or parole was unsatisfactory."
 The Cunningham majority concluded that, pursuant to Apprendi's "`bright-line rule'" (Cunningham, supra, 549 U.S. at p. ____ [127 S.Ct. at p. 869], quoting Blakely v. Washington, supra,542 U.S. at p. 308), such factors are subject toApprendis jury trial requirement: "Justice KENNEDY urges a distinction between facts concerning the offense, whereApprendi would apply, and facts concerning the offender, where it would not. Post, at 872 (dissenting opinion). Apprendi itself, however, leaves no room for the bifurcated approach Justice KENNEDY proposes. See530 U.S., at 490 [120 S.Ct. 2348] ('[A]ny fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' (emphasis added))." (Cunningham, supra, 549 U.S. at p. ____, fn. 14 [127 S.Ct. at p. 869, fn. 14], quotingApprendi.)
 Prior to Cunningham, the United States Supreme Court had repeatedly described the "narrow exception" (Apprendi, supra, 530 U.S. at p. 489) provided inAlmendarez-Torres in such a manner as to exclude recidivism related factors from its scope. (United States v. Booker, supra,543 U.S. at p. 244 (Booker) ["[W]e reaffirm our holding inApprendi: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt"]; Blakely v.Washington, supra, 542 U.S. at p. 301 [stating that case requires court to "apply the rule we expressed in [Apprendi]: `Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt'"]; Ring v. Arizona,supra, 536 U.S. at p. 597, fn. 4 (Ring) [describing Almendarez-Torres as holding "that the fact of prior conviction may be found by the judge even if it increases the statutory maximum sentence"].)
 In contrast, we find nothing in Booker,Blakely, or Ring that warrants expanding the "exceptional departure" (Apprendi v. New Jersey,supra, 530 U.S. at p. 487) (Apprendi) established in Almendarez-Torres from the *Page 1032 "historic practice" outlined inApprendi, which prohibits the imposition of a term of punishment greater than that authorized by the jury's verdict. (Apprendi, supra, 530 U.S. at p. 487.) Accordingly, we conclude that the United States Supreme Court's statement that, "[e]xcept for a prior conviction, `any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt'" (Cunningham, supra, 549 U.S. at p. ____ [127 S.Ct. at p. 868]), means that courts may consideronly the fact of the defendant having incurred a prior conviction, and not other factors related to the defendant's prior convictions.
 Although "`that should be the end of the matter'" (Cunningham, supra, 549 U.S. at p. ____ [127 S.Ct. at p. 858], quoting Blakely v. Washington, supra,542 U.S. at p. 313), lest we be charged with adopting a "wooden" interpretation of the Almendarez-Torres exception (Cunningham, supra, 549 U.S. at p. ____ [127 S.Ct. at p. 872] (dis. opn. of Kennedy, J.)), we note that many of the reasons the Supreme Court offered in Apprendi for distinguishing Almendarez-Torres apply with equal force to the recidivism related factors present in this case. (SeeApprendi, supra, 530 U.S. at p. 488 ["Both the certainty that procedural safeguards attached to any `fact' of prior conviction, and the reality that Almendarez-Torres did not challenge the accuracy of that `fact' in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a `fact' increasing punishment beyond the maximum of the statutory range"].)
 Unlike the bare, and admitted, prior convictions at issue in Almendarez-Torres, Govan has neither admitted the recidivism related aggravating facts in this case, nor has a prior jury determined any of those facts to be true beyond a reasonable doubt. Further, the Cunningham
court rejected a primary rationale underlying theAlmendarez-Torres decision, — that "recidivism `does not relate to the commission of the offense' itself (Apprendi, supra, 530 U.S. at p. 496, quotingAlmendarez-Torres, supra, 523 U.S. at p. 244) — as a basis for creating an exception to its holding. (Cunningham, supra, 549 U.S. at p., fn. 14 ___ [127 S.Ct. at p. 869, fn. 14].)
 Since none of the recidivism related aggravating factors on which the trial court in this case relied is the mere fact of a prior conviction, we conclude that the trial court improperly relied on these factors in imposing an upper term sentence. *Page 1033 
 b. The fact that there is evidence in the record that would provide a constitutionally permissible ground for exceeding the middle term does not authorize a trial court to rely on impermissible factors in imposing an upper term sentence.
 The People maintain that althoughCunningham "generally precludes a trial court from finding facts to impose an upper term sentence, and . . . holds that the middle term is the statutory maximum," there are still aggravating factors, such as those related to recidivism, on which a court may base an upper term sentence even without a jury finding. The People argue that where the record establishes the existence of any aggravating factor that constitutes a constitutionally permissible ground for imposing an upper sentence, the imposition of an upper term is not error under Cunningham. The People maintain that because a single aggravating circumstance is sufficient to render a defendant eligible for an upper term under California law, imposition of the upper term is constitutionally permissible in all such cases, irrespective of the particular factors on which the trial court actually relied in imposing an upper term. The People contend, "a trial court's finding of a single aggravating circumstance based on the defendant's criminal history falls within the recidivism exception to the jury trial requirement and is sufficient to authorize the imposition of an upper term sentence under the Sixth Amendment."
 The People's argument is premised on the proposition that the upper term is the "statutory maximum" (Cunningham, supra, 549 U.S. at p. ____ [127 S.Ct. at p. 868]) in all cases in which a single constitutionally permissible aggravating factor exists. (See also Black, supra, 35 Cal.4th at p. 1270 ["the jury's findings pertaining to defendant's probation eligibility, and the trial court's findings pertaining to defendant's criminal record, were each sufficient to satisfy this statutory requirement [that there be at least one aggravating circumstance], thereby making the upper term thestatutory maximum for the offense" (italics added) (cone. dis. opn. of Kennard, J.)].) However, asCunningham makes clear, the statutory maximum under the DSL is always the middle term. (Cunningham,supra, 549 U.S. at p. ____ [127 S.Ct. at p. 868] ["In accord with Blakely, therefore, the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum"].) This is because facts inherent in a jury's verdict, a defendant's admission, or a defendant's prior conviction, are never sufficient under the DSL to authorize an upper term sentence. Rather, the DSL requires that the trial court find that such facts constitute a circumstance in aggravation before the court may impose an upper term. (Cunningham, supra, 549 U.S. at p. ____ [127 S.Ct. at p. 862] ["In sum, California's DSL, and the rules governing its application, direct the sentencing court to start with the middle term, and to move from that term only whenthe court itself finds and places on the record facts whether related to the offense or the offender — beyond the elements of *Page 1034 the charged offense" (italics added)].) This judicial factfinding is precisely what Cunningham
prohibits.
 The existence of a prior conviction, or the existence of a fact found by the jury or admitted by the defendant upon which the trial court is authorized under the DSL to impose an aggravated term does not raise the statutory maximum. Rather, in such a case, the trial court may sentence a defendant beyond the statutory maximum and impose an upper term sentence. (Cunningham, supra, 549 U.S. at p. ____ [127 S.Ct. at p. 868] ["Except for a prior conviction, `any fact that increases the penalty for a crime beyond theprescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt'" (italics added)].) For this reason, we disagree with the People's suggestion that the upper term is the statutory maximum whenever the record reflects the existence of a single constitutionally permissible aggravating factor. Further, as Cunningham
also makes clear, a court may exceed the statutory maximum only on the basis of a prior conviction, or facts found by the jury or admitted by the defendant. (Id. at p. ____ [127 S.Ct. at p. 860] ["As this Court's decisions instruct, the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant"].)
 c. The error requires reversal
 The People contend that any Cunningham
error in this case was harmless. In Washington v.Recuenco (2006) 548 U.S. ____ [165 L.Ed.2d 466,126 S.Ct. 2546, 2549] (Recuenco), the United States Supreme Court considered whether a court's imposition of an enhanced sentence on the basis of a fact not found by the jury, in violation ofBlakely, constitutes structural error necessitating automatic reversal. The Recuenco court held, "Failure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error." (Recuenco, supra, 548 U.S. at p. ____ [126 S.Ct. at p. 2553].) Rather, a reviewing court must determine whether the prosecution can establish beyond a reasonable doubt that the jury would have found the fact supporting the enhanced sentence if it had been asked to do so. (Id. at pp. ____ — ____ [126 S.Ct. at pp. 2550-2552], citing Chapman v.California (1967) 386 U.S. 18 [17 L.Ed.2d 705,87 S.Ct. 824] and Neder v. United States (1999) 527 U.S. 1
[144 L.Ed.2d 35, 119 S.Ct. 1827].) Since Cunningham is an application of Blakely, we conclude thatRecuenco governs our determination of whether each of the supporting facts upon which the trial court relied would have been found by the jury. *Page 1035 
 The People claim that the jury would have found that Govan committed the burglaries in a manner that indicated planning, sophistication, and professionalism, observing that the evidence in support of this finding was overwhelming. We disagree. While Smith's and Govan's use of cellular telephones to facilitate the burglaries demonstrated some level of sophistication, the remainder of the evidence pertaining to the burglaries did not suggest a high level of planning, sophistication, or professionalism. For example, there was no evidence that defendants used tools or disguises. All of the burglaries were committed within a short span of time on the same day. We conclude that the People have failed to establish beyond a reasonable doubt that the jury would have found that Govan committed the offenses in a manner that evinced planning, sophistication, and professionalism.
 The People do not attempt to establish that the jury would have found the remaining recidivism related facts upon which the trial court relied.[8] Nor do the People argue that it can be determined beyond a reasonable doubt that the trial court would have imposed an upper term solely on the basis of the fact of Govan's prior convictions. The People do contend that if this court concludes that a jury would have found at least one of the aggravating factors true beyond a reasonable doubt, then no reversible Cunningham error has occurred. We reject that argument for the reasons stated in part III.C.4.a., ante.
 Accordingly, since the People have failed to establish beyond a reasonable doubt that the trial court would have imposed an upper term sentence solely on the basis of constitutionally permissible aggravating factors, we conclude that the Cunningham error requires reversal.[9] *Page 1036 
 IV. DISPOSITION The convictions are affirmed. The judgment is reversed as to the upper term sentence imposed on count 1. The sentence is vacated and the matter is remanded for resentencing.
McDonald, J., concurred.
[1] Unless otherwise specified, all subsequent statutory references are to the Penal Code.
[2] We note that the effect ofCunningham on sentencing under California law is pending in several cases before the California Supreme Court. (See, e.g., People v. Hernandez, review granted Feb. 7, 2007, S148974.)
[3] Govan acknowledged that "Ted" and "Tec-9" were the same person. However, Govan stated that he knew the man only as "Ted."
[4] In his interview with police, Smith did not admit having committed the Barba burglary. However, given Smith's statement to the police that Govan was already in the car when the driver picked up Smith on the day of the burglaries, Smith's statement implicated Govan in the Barba burglary. At trial, Smith responded affirmatively to the prosecutor's question, "Didn't you actually tell [the police] that Karl Govan was with you that entire day during all the burglaries?"
[5] In his opening brief, Govan relies onPeople v. Geiger (1984) 35 Cal.3d 510, 514
[199 Cal.Rptr. 45, 674 P.2d 1303] (Geiger), overruled by People v. Birks (1998) 19 Cal.4th 108, 139
[77 Cal.Rptr.2d 848, 960 P.2d 1073]. In Geiger, the California Supreme Court concluded that a defendant has a state constitutional right to a lesser related offense instruction under certain circumstances. (Geiger, supra,35 Cal.4th at p. 514.) Govan concedes in his reply brief thatGeiger was overruled by Birks. Govan maintains in his reply brief that the trial court violated his right to present a defense under the United States Constitution.
[6] All subsequent rule references are to the California Rules of Court that were in effect at the time of Govan's initial sentencing. On January 1, 2007, the Rules were renumbered.
[7] The Legislature has amended DSL in response to Cunningham. (Stats. 2007, ch. 3, § 2, eff. Mar. 30, 2007.) All subsequent references to DSL are to that which was in effect prior to this amendment.
[8] There are at least two potential difficulties with respect to any attempt to establish harmlessness. First, we are not aware of any provision of California law by which the jury could have made findings of facts pertaining to the recidivism related aggravating circumstances. (See Recuenco, supra, 548 U.S. at p. ____ [126 S.Ct. at p. 2550] ["If respondent is correct that Washington law does not provide for a procedure by which his jury could have made a finding pertaining to his possession of a firearm, that merely suggests that respondent will be able to demonstrate that the Blakely violation in this particular case was not harmless" (italics omitted)].) Second, the evidence on which the court based its recidivism related findings was contained in a probation report that was not presented to the jury.
[9] We reject Govan's request that we consider whether to bar the trial court from imposing consecutive sentences in resentencing him on the theory that to do so would be to punish him for exercising his right to appeal, citingPeople v. Hanson (2000) 23 Cal.4th 355, 359
[97 Cal.Rptr.2d 58, 1 P.3d 650] and People v. Mi (1967)66 Cal.2d 277, 281 [57 Cal.Rptr. 348, 424 P.2d 932]. The issue may or may not occur on remand. Accordingly, we express no view on this issue.
HALLER, J., Concurring.
 I concur in full with the majority opinion concerning the four burglary convictions. I also agree that Govan's sentence violated Cunningham v. California
(2007) 549 U.S. ____ [166 L.Ed.2d 856, 127 S.Ct. 856] (Cunningham). Under Cunningham, it was improper for the trial court to rely on the manner in which the crime was carried out as an aggravating factor (Cal. Rules of Court,[1] rule 4.421(a)(8)), and it is unclear from the record whether the court would have imposed the upper term without relying on this factor. Thus, the matter must be remanded for resentencing.
 I write separately because of my concern with the breadth of the majority's language, specifically its conclusion that none of the other aggravating factors on which the trial court relied in selecting the upper term were constitutionally permissible and its far-reaching assessment thatCunningham "rejected the notion that recidivism related factors pertaining to a defendant need not be proven to a jury." (Maj. opn., ante, at p. 1030.)
 In Apprendi v. New Jersey (2000)530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] (Apprendi), the United States Supreme Court recognized a "prior conviction" exception to the rule that a trial court may not increase the penalty for a crime without the aggravating factor submitted to the jury and proved beyond a reasonable doubt. (Id. at p. 490.) This exception was derived from the court's earlier decision in Almendarez-Torres v. United States (1998)523 U.S. 224 [140 L.Ed.2d 350, 118 S.Ct. 1219] which recognized the special role of a defendant's recidivism in a trial court's authority to sentence a criminal defendant. Under these authorities, California courts and courts from other jurisdictions have repeatedly held the prior conviction exception "`is not limited simply to the bare fact of adefendant's prior conviction' [citation], but appliesto `matters involving the more broadly framed issueof "recidivism."'" (People v. Banks
(2007) 149 Cal.App.4th 969, 973, italics added; see Peoplev. McGee (2006) 38 Cal.4th 682, 706-707
[42 Cal.Rptr.3d 899, *Page 1037 133 P.3d 1054]; People v. Waymire (2007)149 Cal.App.4th 1448, 1455-1456 [57 Cal.Rptr.3d 877]; Peoplev. Thomas (2001) 91 Cal.App.4th 212, 221
[110 Cal.Rptr.2d 571]; U.S. v. Cordero (5th Cir.2006)465 F.3d 626, 632-633; U.S. v. Corchado (10th Cir.2005)427 F.3d 815, 820; U.S. v. Fagans (2d Cir.2005)406 F.3d 138, 141-142.) In McGee, the California Supreme Court specifically rejected attempts to narrow this exception "in advance of such a decision by the [United States Supreme Court]." (People v. McGee, supra,38 Cal.4th at p. 709.)
 In Cunningham, the United States Supreme Court expressly reaffirmed the validity of theAlmendarez-Torres prior conviction exception, but did not specifically address the issue of the proper scope of the exception because the issue was not raised in the case. (Cunningham, supra, 549 U.S. at p. ____ [127 S.Ct. at p. 864].) The majority here nonetheless asserts thatCunningham considered and "clarified" the scope issue, and that Cunningham specifically "rejected
the notion that recidivism related factors pertaining to a defendant need not be proven to a jury." (Maj. opn.,ante, at p. 1030, italics added.) The majority thus reads Cunningham as eliminating the court's role in considering traditional recidivism factors closely associated with the fact of a prior conviction.
 In support of this view, the majority relies on footnote 14 of the Cunningham decision. (Maj. opn.,ante, at p. 1031.) I am not convinced this footnote represents an intention to narrow the scope of the prior conviction exception.
 In footnote 14, the Cunningham majority rejected Justice Kennedy's proposed "distinction between facts concerning the offense, where Apprendi would apply, and facts concerning the offender, where it would not." (Cunningham, supra, 549 U.S. at. p. ____, fn. 14 [127 S.Ct. at p. 869, fn. 14].) However, Justice Kennedy's dissent did not concern the prior conviction exception ofAlmendarez-Torres. Instead, it reflected his view that the Apprendi line of cases was incorrectly decided, and his opinion that Apprendi should be limited to enhancements based on the "nature of the offense," e.g., weapon use, violence employed, the defendant's motivations in committing the crime. (Cunningham, supra, 549 U.S. at p. ____ [127 S.Ct. at pp. 872-873] (dis. opn. of Kennedy, J.).) Justice Kennedy contrasted these facts with a second
category of facts — those "exhibited by defendant" — and identified this second category as including not only "prior convictions" and recidivism-related facts, but also a defendant's "cooperation or noncooperation with law enforcement; remorse or the lack of it; or other aspects of the defendant's history bearing upon his background and contribution to the community." (Id. at p. ____ [127 S.Ct. at p. 873].) It was this proposed "bifurcated approach" (id. at p. ____, fn. 14 [127 S.Ct. at p. 869, fn. 14]), far more encompassing than the Almendarez-Torres exception, that the Cunningham *Page 1038 majority rejected in footnote 14. Although the majority here believes the reasoning underlying the BlakelyI Cunningham decisions now extends to all recidivism related factors, I am not persuaded the United States Supreme Court decided this issue inCunningham.
 Because Cunningham did not involve theAlmendarez-Torres exception to the Apprendi
rule, I cannot join the majority's conclusions narrowing the scope of the exception. (See People v. McGee,supra, 38 Cal.4th at pp. 706-707.) Although there can be no doubt that recent United States Supreme Court decisions have changed the factors upon which trial courts can rely in selecting aggravated sentences, the courts have consistently recognized the important role of a trial court in considering a defendant's prior convictions when selecting the appropriate sentence. Where, as here, that prior criminal record is set forth in a probation report, I question whether a trial court should be prohibited from relying on the probation report to conclude, for example, that defendant was on probation at the time he committed the current crime or to consider the number of defendant's prior convictions, and use those findings to select an aggravated term. These determinations do not require factual conclusions about the circumstances underlying the prior convictions, and can be based solely on the fact of the prior probation and/or prior convictions as established on the face of the judicial record.
 It would appear that under the majority's view, if a defendant were convicted of a felony and, at sentencing, the trial court relied on a probation report reflecting the defendant's prior record and current status on probation, it would violate Cunningham for the trial court to conclude that the defendant was on probation when the crime was committed (rule 4.421(b)(4)), or that the instant conviction violates the terms and conditions of the defendant's probation, rendering his performance on probation unsatisfactory (rule 4.421(b)(5)). Similarly, the majority would apparently conclude that if that same probation report revealed the defendant had previously been convicted of a petty theft followed by grand theft conviction with a proven Penal Code section 12022.6
enhancement (over $50,000), Cunningham would prohibit the trial court from relying on these convictions to conclude the defendant's prior convictions are of increasing seriousness (rule 4.421(b)(2)).
 Rather than the broad rejection of the recidivism exception advocated by the majority, I submit that a narrow approach is consistent with recent United States Supreme Court directives and well-settled case law. Further, I do not see a need to announce a broad holding untethered by the facts of this case. If we are going to substantially narrow theAlmendarez-Torres rule, it would be preferable to do so on a fact-based analysis, determining whether in a particular case, a proposed aggravating factor is sufficiently removed from the *Page 1039 fact of the prior conviction that proof must be submitted to a jury, or whether the factor is so closely tied to the fact of the prior conviction that it is proper for the trial court to take this factor into consideration without submitting the issue to a jury. Under the majority's expansive view, a factor that goes beyond the existence of the prior conviction but is, factually and legally, inextricably linked with this fact — must be submitted to a jury. I would not go this far.
[1] All further Rule references are to the California Rules of Court. *Page 1040