Filed 7/24/15  P. v. Salih CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D065924 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE323564) |
| MUAYED SALIH, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Patricia K. Cookson, Judge.  Affirmed as modified.

Kurt David Hermansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Charles C. Ragland and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

Muayed Salih appeals from a judgment convicting him of three counts of assault with a deadly weapon.  He argues the judgment must be reversed because the trial court

violated his constitutional right to present a complete defense by precluding his counsel from delineating the elements of the lesser related offense of brandishing during closing arguments. We reject this contention.

As to sentencing, defendant contends the court erred by adding a five-year enhancement term based on his prior serious felony conviction to each of the determinate sentences imposed on the three assault counts. We agree. While this appeal was pending, the California Supreme Court held that the five-year prior serious felony enhancement should be added only *once* to a defendant's aggregate determinate term, even when the determinate term is derived from the Three Strikes Law. (*People v. Sasser* (2015) 61 Cal.4th 1, 6-7, 12-17.) The *Sasser* holding applies to this case. Accordingly, we modify the judgment to impose only one five-year enhancement for the serious felony prior, which reduces defendant's total prison sentence from 22 years to 17 years. As so modified, the judgment is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant and victim Abdul Almaleki were friends for several years. The friendship ended when defendant became angry at Almaleki based on his belief that Almaleki had influenced his sister-in-law not to marry defendant. On several occasions in 2009 and 2010 when defendant encountered Almaleki and members of his family at a swap meet, defendant yelled and cursed at Almaleki, and on one occasion defendant said " 'I am going to get a gun and kill you all guys.' " Defendant would frequently talk to his roommate about Almaleki; he "cussed" about Almaleki and said things like he was going

2

to hit Almaleki when he saw him and he was going to buy a gun and kill Almaleki and his son.

In September 2011 while at a market, defendant spat on Almaleki, swore at him, and attacked him, and then followed him in his car as Almaleki was driving his car trying to get away. Based on this latter incident, in January 2012 defendant was convicted of assault with a deadly weapon and exhibiting a deadly weapon; he was placed on probation and ordered to serve one year in jail. Defendant was released from jail on July 25, 2012.

The assault offenses charged in the current case occurred on the afternoon of September 1, 2012, when defendant again encountered Almaleki, accompanied by his 15-year-old son (Mohammed), at the market. At trial, defendant's assaultive conduct was described by Almaleki, Mohammed, and several bystanders, and portions of the assault were depicted in surveillance videos.

The incident started when defendant threw a large vegetable can at Almaleki, hitting him in the head. Defendant was running towards Almaleki, cursing and repeatedly saying, "I will kill you." Almaleki then "felt a stab" in his stomach and saw that defendant had a knife.[1] As Almaleki was fleeing from the store, defendant threw an electrical object at him, hitting him in the shoulder. Defendant chased Almaleki, holding the knife in one hand and a meat grinder part that he had grabbed in his other hand. Defendant was aiming the meat grinder part at Almaleki to throw it at his head.

---

[1] After investigating the case, the authorities assessed that the stabbing object held by defendant may have been a knife sharpener rather than a knife.

As defendant continued to chase him, Almaleki ran in and out of neighboring businesses and into the street. At some point defendant was no longer holding the knife, but instead was holding a large metal bar as well as the meat grinder part. Defendant continued to curse at Almaleki and was repeatedly saying, "I will kill you." A man working in a neighboring business grabbed defendant and tried to convince him to let go of the metal objects, but was unsuccessful.

Meanwhile, Almaleki's son, Mohammed, had also run out of the market with his father as defendant chased after them. When Mohammed stopped in the parking lot, defendant scratched Mohammed on his arm with the knife as defendant continued to chase Almaleki. Mohammed heard defendant saying, " 'I am going to kill you or kill your family today.' " At one point defendant got into his car in the parking lot, but Mohammed moved his father's truck to block defendant's car because he was afraid defendant would go to their family's home and kill his mother and sisters. Defendant resumed chasing Almaleki, and Mohammed attempted to slow defendant by kicking him from behind so he would trip.

When Officer Roberto Bonilla arrived at the scene, defendant was holding a metal bar raised above his head, and a metal object by his waist. Bonilla exited his patrol vehicle, pointed his gun at defendant, and told defendant to drop his weapons. As defendant continued to advance in an aggressive manner, Bonilla fired several shots. Defendant fell to the ground and was arrested.

4

In a tape recorded interview, defendant admitted he assaulted Almaleki; claimed Almaleki also assaulted him; and admitted he acted as if he was going to throw an object at the police officer who arrived at the scene.

*Jury Verdict and Sentence*

Defendant was charged with attempted murder of Almaleki (count 1), assault with a deadly weapon against an officer (count 2), and assault with a deadly weapon against Almaleki and Mohammed (counts 3 and 4). The jury convicted him of the three assault counts and deadlocked on the attempted murder count, and the latter charge was dismissed. Defendant admitted a prior serious felony conviction and prior strike conviction.

The court sentenced defendant to 22 years in prison. His sentence consisted of (1) a 10-year term for the count 2 assault on an officer (five-year upper term, doubled based on the prior strike); (2) a consecutive two-year term for the count 3 assault on Almaleki (one-third the three-year mid-term, doubled); and (3) two additional five-year terms (one for count 3 and the other for count 4) based on the prior serious felony enhancement. For the count 4 assault on Mohammed, the court imposed the same sentence as for count 3 (including the five-year prior serious felony enhancement), but ordered the count 4 sentence to run concurrently.

DISCUSSION

I. *Ruling Precluding Defense Counsel from Listing Elements of Brandishing*

Defendant argues the trial court interfered with his constitutional rights to effective assistance of counsel and to present a complete defense when it precluded his

5

counsel from listing the elements of the lesser related offense of brandishing during closing arguments to the jury.

## A. *Background*

When discussing jury instructions, defense counsel requested that the court instruct the jury on the lesser offense of brandishing. The court noted that brandishing was not a lesser included offense of assault with a deadly weapon, and the prosecutor objected to the instruction. Based on the prosecutor's objection, the court ruled the jury would not be instructed on brandishing as a lesser related offense. With respect to the assault charges, the jury was instructed the offense included the requirements that the defendant commit an act that by its nature would directly and probably result in the application of force to a person, and that defendant had the present ability to apply force with a deadly weapon to a person. (See CALCRIM Nos. 860, 875.)

During a recess in the proceedings just before the commencement of defense counsel's closing arguments, the prosecutor objected to a power point slide that defense counsel intended to use which referred to the offense of brandishing. The power point slide cited Penal Code section 417 and listed the elements of brandishing; i.e., (1) drawing or exhibiting a weapon in someone's presence, and (2) doing so in a rude, angry or threatening manner. (See CALCRIM No. 983; Pen. Code,[2] § 417.)

The prosecutor argued a list of the brandishing elements was not appropriate because the jury was not considering this offense as a verdict option. Defense counsel

---

[2] Subsequent unspecified statutory references are to the Penal Code.

6

countered the list of elements was proper for purposes of presenting the defense theory that defendant committed a different crime rather than the charged crimes, and the jury had a right to know "what brandishing is" and that it is a crime. The court ruled defense counsel could not cite the Penal Code section and list the elements, reasoning this was improper argument and there was no need to review the elements because the jury was not being instructed on brandishing as a lesser offense. However, the court stated that although defense counsel could not "show the jury the elements," he was free to argue that defendant "brandished a weapon" and should be found not guilty of the charged offenses.

*Defense Counsel's Closing Arguments*

During closing arguments defense counsel argued defendant did not commit an assault against victims Mohammed and Officer Bonilla, but only committed the crime of brandishing.

Regarding Mohammed, defense counsel argued that no assault occurred when defendant held up an object and ran down the aisle because the conduct was not likely to result in the application of force. To illustrate this claim, defense counsel stated, "I can stand here with my pen for a year over your head and there is nothing about this that is going to make it apply any force to you. . . . *I am brandishing a weapon in a deadly manner. A deadly weapon in a threatening and angry way.* I have not assaulted you. [¶] If I pulled the trigger, I've assaulted you. If I pick up this object and throw it to you or towards you, maybe I've assaulted you, but holding this thing up over your head, how do you get from that to did 'an act with a deadly weapon that by its nature would directly and

probably result in the application of force.' As long as I am holding it up here, it is never going to result in the application of force. *This is a brandishing of a weapon.*" (Italics added.)

During this argument, defense counsel told the jurors he was going to read to them from section 417. The prosecutor objected; the trial court sustained the objection; and when defense counsel asked if he could "read the elements," the court responded "No."

Defense counsel continued with his argument with respect to victim Mohammed, stating: "Brandishing a weapon. *When you brandish a weapon in an angry or threatening manner, that is a crime.* It's not assault because it hasn't gotten to that point yet. But it's a brandishing. That is what he did. He brandished a weapon. [¶] . . . [¶] Does my client throw it at him? Does my client run over and smack him or try to smack him with it? *He has brandished, he has exhibited a deadly weapon in a rude and threatening and angry manner* and in a fight or argument. That is what he has done. [¶] Has he assaulted that boy yet? No. . . . He threatened him with the weapon. He brandished that weapon." (Italics added.)

Defense counsel likewise addressed defendant's conduct directed at Officer Bonilla, stating, "You see him walking quickly towards the officer with the thing raised. [¶] . . . Did he throw it at the officer and miss? Did he shoot a bullet and miss? *This is brandishing a weapon in a rude and angry manner.* It may lead to an assault, but it is, of itself, not yet an assault. [¶] Now, make no mistake about it, I am not suggesting to you that any police officer has to wait to be assaulted before he defends himself. . . . As soon as you *brandish a weapon in a rude and threatening and angry manner* towards an

8

officer, they are trained to shoot to kill . . . . [¶] . . .The officer was not assaulted, but he was allowed to defend himself anyway." (Italics added.)

*Rebuttal Closing Arguments*

In rebuttal closing arguments, the prosecutor responded to defense counsel's claim that defendant merely committed brandishing, stating: "But to say that the defendant was not actually assaulting these people, especially the cop, that that was *just a brandishing, that goes beyond ridiculous in this case*. [¶] . . . [¶] . . . I have the law right here and read it. The defendant did an act with a deadly weapon that by its nature would directly and probably result in the application of force to someone. [¶] When the defendant acted he had the present ability to apply force with a deadly weapon. You can commit assault by doing an act that by its nature would probably result in the application of force as long as you have the ability to apply force. [¶] . . . *Of course, he had the present ability to apply force . . . . Of course he did an act that by its nature would probably result in the application of force. . . .* [¶] He was chasing them holding these instruments. That is an assault as long as he had that present ability. The cop had every right to shoot him because he was assaulting him. [¶] If the defendant was merely . . . 40 feet off or 50 feet off *brandishing a weapon*, not moving on the officer, the officer wouldn't have the right to shoot him. Forty or 50 feet away, *he wouldn't have the present ability at that point*. [¶] Now, if he started charging, that might change things really quickly and that is what happened here. . . . *That was an assault. And to say anything else is ridiculous.* [¶] . . . [¶] *Did the defendant brandish a weapon? Certainly. He did way more than*

9

*brandish a weapon* because he acted, he chased, he yelled, kill you. And *he had the present ability based on the circumstances to actually apply force*." (Italics added.)

B. *Relevant Legal Principles*

A criminal defendant has a constitutional right to present closing argument to the trier of fact. (*Herring v. New York* (1975) 422 U.S. 853, 862-865 [invalidating statute that allowed trial court to completely deny closing summation in criminal bench trial].) However, a trial court has broad discretion to control the scope of closing argument provided the defendant is not precluded from making his central point. (See *People v. Marshall* (1996) 13 Cal.4th 799, 854-855.) As explained in *Herring*, the constitutional right to present closing arguments does not mean "closing arguments in a criminal case must be uncontrolled or even unrestrained. *The presiding judge must be and is given great latitude in controlling the duration and limiting the scope of closing summations*. He may limit counsel to a reasonable time and may terminate argument when continuation would be repetitive or redundant. *He may ensure that argument does not stray unduly from the mark*, or otherwise impede the fair and orderly conduct of the trial. In all these respects he must have broad discretion." (*Herring, supra*, at p. 862, italics added.)

A defendant also has a constitutional right to " 'a meaningful opportunity to present a complete defense.' " (*Crane v. Kentucky* (1986) 476 U.S. 683, 690.) However, a trial court retains the discretion to prevent presentation to the jury of matters that are marginally relevant or that pose an undue risk of confusion of the issues. (See *id*. at pp. 689-690.) Further, of relevance here, there is no constitutional requirement that a trial

10

court give the jury the option of convicting the defendant of an uncharged lesser offense that is related to, but not necessarily included in, a charged offense. (*Hopkins v. Reeves* (1998) 524 U.S. 88, 96-97.) Thus, unless the prosecution agrees to instruction on a lesser related offense, a defendant has no right to compel presentation of this lesser verdict option to the jury. (*People v. Valentine* (2006) 143 Cal.App.4th 1383, 1387.)

Although a defendant has no right to an *instruction* that allows the jury to convict of a lesser related offense, this does not preclude a defendant from referring to a lesser related offense when *arguing* to the jury that the prosecution has not proven all the elements of the charged offense beyond a reasonable doubt. (*People v. Valentine, supra*, 143 Cal.App.4th at p. 1388.) In *Valentine*, the court rejected the defendant's argument that he was entitled to an instruction on receiving stolen property (a lesser related offense of the charged robbery offense) because to decline the instruction "amounted to a failure to instruct on a defense theory—that he received property he knew to be stolen but that he did not steal it." (*Id*. at p. 1387.) *Valentine* reasoned that receiving stolen property was not a defense to robbery, but a theory of criminal liability based on a different offense; the failure to instruct did not impinge on the defendant's right to present a defense to robbery but simply reflected that the prosecutor chose not to file that different offense; and defendant was entitled to "*argue to the jury that his culpability was as one who was in possession of stolen property but not one who committed a robbery*." (*Id*. at p. 1388, italics added.) The California Supreme Court has likewise held that the refusal to instruct on a lesser related offense did not deprive the defendant of an opportunity to present a defense given that the defense theory premised on the lesser offense was presented to the

11

jury by other means, including defense counsel's closing argument. (*People v. Schmeck* (2005) 37 Cal.4th 240, 291-292.)

## C. *Analysis*

Defendant does not dispute that brandishing is a lesser related, but not a lesser necessarily included, offense of assault, and hence he had no right to have the jury instructed on brandishing as a lesser offense verdict option. (See *People v. Escarcega* (1974) 43 Cal.App.3d 391, 398.) However, he contends he should have been allowed to list the elements of the brandishing offense because without this information the jury would not have understood the meaning of brandishing for purposes of evaluating the defense theory that he did not commit the charged offense of assault.

The record does not support defendant's claim that a listing of the brandishing elements was necessary for the jury to understand and evaluate the defense theory pertaining to this offense. Defense counsel was permitted to argue to the jury that defendant's conduct consisted merely of holding a weapon over his head; this conduct amounted to the crime of brandishing a weapon; but the conduct did not constitute assault because it had not reached the point where it was likely to result in the application of force. During this argument, defense counsel, without objection, repeatedly described the type of conduct associated with brandishing, stating "brandishing a weapon . . . in a threatening and angry way"; "[w]hen you brandish a weapon in an angry or threatening manner, that is a crime"; "[h]as brandished, he has exhibited a deadly weapon in a rude and threatening and angry manner"; "[t]his is brandishing a weapon in a rude and angry manner"; "[a]s soon as you brandish a weapon in a rude and threatening and angry

12

manner."  Thus, defense counsel presented the jury with a standard, commonsense definition of brandishing a weapon.  (See Merriam-Webster's Collegiate Dict. (10th ed. 2002) p. 139 [brandishing: "to shake or wave (as a weapon) menancingly" or "to exhibit in an ostentatious or aggressive manner"].)

The trial court reasonably exercised its discretion to preclude defense counsel from actually listing or displaying the legal elements of the brandishing offense because the jury was *not* tasked with evaluating whether the prosecution proved each of these elements.  Rather, the jury was required to decide whether the prosecution had proven each of the elements of the *assault with a deadly weapon* offense.  Defense counsel was permissibly referring to the brandishing offense to urge the jury to reject one of the elements of assault (i.e., an act likely to result in the application of force), and for purposes of presenting this argument a commonsense definition of brandishing sufficed and there was no need for the jury to be provided a list of the legally-defined elements. The trial court's ruling did not infringe upon defendant's constitutional rights to effective assistance of counsel and presentation of a complete defense.

Alternatively, even if the trial court should have allowed defense counsel to formally list the brandishing elements during closing argument, there was no prejudice. Contrary to defendant's claim, any such error is not reversible per se.  (*Glebe v. Frost* (2014) __ U.S. __, 135 S.Ct. 429, 430-431 [trial court's erroneous ruling precluding defense counsel from presenting alternative defense theory to jury in closing argument was not structural error].)  Whether we apply the standard for state law error or the standard for federal constitutional error, the limitation on defense counsel's closing

13

argument was harmless. (*People v. Rogers* (2006) 39 Cal.4th 826, 871-872 [harmless beyond a reasonable doubt standard applies when error deprives defendant of right to present complete defense]; *People v. Boyette* (2002) 29 Cal.4th 381, 428-429 [state law reasonable probability standard of prejudice applies when error did not result in complete exclusion of defense].) Defense counsel was permitted to argue to the jury that defendant's conduct consisted of the crime of brandishing a deadly weapon in a threatening, rude, or angry manner. This presented the jury with the essential elements of the brandishing offense. (§ 417, subd. (a)(1) [offense committed when person "in the presence of any other person, draws or exhibits any deadly weapon . . . in a rude, angry, or threatening manner"]; see CALCRIM No. 983.) There is nothing in the record to suggest the jury might have been confused or failed to understand the clearly-presented defense theory that defendant's conduct was merely an angry or threatening exhibit of a weapon and it did not satisfy the assault element of an act likely to result in the application of force.

Defendant argues that without a listing of the elements of brandishing, the jurors would not be able to determine if defense counsel accurately described brandishing, and they had no way of knowing what distinguished brandishing from assault. In support, he cites the prosecutor's statement during rebuttal closing argument that the defense brandishing theory was "ridiculous." It is clear from the context of this argument that the prosecutor was not challenging defense counsel's *definition* of brandishing, but rather was challenging the defense claim that defendant's conduct did not constitute an act that would likely result in the application of force. Further, the jury knew from the

14

instructions that assault required an act likely to result in the application of force, and it is apparent from counsel's arguments that all understood that absent proof of this element defendant's conduct could constitute brandishing but not assault. Because the meaning of brandishing was undisputed and presented to the jury in a commonsense manner, there was no prejudice from the trial court's ruling that precluded defense counsel from actually listing the legal elements of the offense.

## II. *Five-Year Terms for Prior Serious Felony Conviction*

Section 667, subdivision (a)(1) requires that a five-year enhancement term be imposed for a defendant's serious felony prior conviction. Defendant had one serious felony prior conviction, and the court imposed the five-year enhancement term three times, i.e., on counts 2, 3, and 4 (with the five-year enhancement on count 4 to run concurrently).

While this appeal was pending, the California Supreme Court held that the rule providing that a prior serious felony enhancement should be added only *once* to the total determinate sentence, applies equally to a second-strike defendant who receives multiple determinate terms that are doubled under the Three Strikes Law. (*People v. Sasser, supra*, 61 Cal.4th at pp. 6-7, 12-17.) This rule applies to defendant's determinate sentence.

Accordingly, we modify the judgment to impose only a single five-year prior serious felony enhancement. With this modification, defendant's sentence is reduced from 22 years to 17 years.

DISPOSITION

The judgment is modified to impose only one five-year term for the prior serious felony enhancement, added to defendant's aggregate determinate term. (§ 667, subd. (a)(1).) Defendant's total determinate sentence is reduced from 22 years to 17 years. As so modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment reflecting this modification, and to forward a copy to the Department of Corrections and Rehabilitation.

HALLER, J.

WE CONCUR:


NARES, Acting P. J.


AARON, J.

16