[No. B182712. Second Dist., Div. Six. Oct. 17, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
VINCENT VALENTINE, JR., Defendant and Appellant.

COUNSEL

Larry S. Dushkes, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Herbert S. Tetef and Jonathan J. Kline, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**PERREN, J.**—Appellant Vincent Valentine, Jr., is charged with the crime of robbery. He contends that the evidence shows that he committed the crime of receiving stolen property and asks the trial court to instruct the jury on the elements of that uncharged offense. He hopes to convince the jury that he committed the uncharged offense and that he be acquitted of the charged offense. He is not entitled to such an instruction.

Valentine is convicted of second degree robbery. (Pen. Code, § 211.)[1] He admits a prior strike for residential burglary (§§ 667, subds. (c)(1), (e)(1), 1170.12, subds. (a)(1), (c)(1)) and a prior conviction for a serious felony (§ 667, subd. (a)(1)). He is sentenced to an aggregate term of nine years in state prison.

Valentine appeals, contending that the trial court erred in refusing to give his requested instruction and that, as a result, the jury may have relied on an improper legal theory in returning its verdict. We affirm.

### FACTS AND PROCEDURAL HISTORY

In the early evening of November 8, 2003, Valentine and three friends accosted Nicholas Cruz Alvarez on Channel Islands Boulevard in Oxnard. Alvarez was walking home after cashing a check and was carrying $440 in cash, consisting of four $100 bills and two $20 bills. The four men surrounded Alvarez, backed him against a block wall and demanded money.

---

[1] All statutory references are to the Penal Code.

Alvarez hesitated and was hit twice in the face by one of the men. The men searched Alvarez's person and clothing looking for money. Finally, Alvarez handed one of the men his wallet. The men took all the cash, returned the wallet to Alvarez, divided up the money, and headed for a nearby liquor store.

A bystander witnessed the robbery and gave Alvarez his cell phone to call the police. Four Oxnard police officers responded. As the officers were speaking to Alvarez, Valentine and his friends were seen walking down Channel Islands Boulevard. Alvarez identified them to the police officers.

The men fled and the police officers pursued them. Valentine was found hiding in the bushes and had a 12-pack of Pacifico beer and a bottle of Hennessy cognac in his possession. In a short time, all four men were apprehended and taken into custody. During a custodial search, the officers recovered a $100 bill from each of Valentine's three friends and $94.37 from Valentine.

At trial, Valentine asserted that he did not participate in the robbery but rather stood on the sidelines and watched his friends rob Alvarez. Valentine also claimed he did not take any of Alvarez's money. He asserted the money found during the search was given to him by the mother of one of his friends to buy cognac and included a $20 "tip." On appeal, Valentine admits he received proceeds of the robbery but argues he was a mere bystander and guilty only of receiving stolen property.

## DISCUSSION

### Failure to Instruct on Receiving Stolen Property

Valentine contends the trial court erred by denying his request for a jury instruction on receiving stolen property. He asserts there was evidence that could prove that he did not participate in the robbery but only "received some of the proceeds, ill gotten gains of the robbery after the robbery had been committed."

■ "[T]he trial court normally must, even in the absence of a request, instruct on general principles of law that are closely and openly connected to

the facts and that are necessary for the jury's understanding of the case." (*People v. Carter* (2003) 30 Cal.4th 1166, 1219 [135 Cal.Rptr.2d 553, 70 P.3d 981].) The obligation to instruct includes giving instructions on lesser included offenses when warranted by substantial evidence. (*People v. Breverman* (1998) 19 Cal.4th 142, 162 [77 Cal.Rptr.2d 870, 960 P.2d 1094].) However, a defendant has no right to instructions on lesser related offenses even if he requests the instruction and it would have been supported by substantial evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1064 [99 Cal.Rptr.2d 1, 5 P.3d 68].) California law does not permit a court to instruct on an uncharged lesser related crime unless agreed to by the prosecution. (*People v. Birks* (1998) 19 Cal.4th 108, 136–137 [77 Cal.Rptr.2d 848, 960 P.2d 1073].) Here, the prosecution objected to the instruction.

Valentine acknowledges that receiving stolen property is not a lesser included offense of robbery. Valentine asserts he nonetheless was entitled to the requested instruction because the omission amounted to a failure to instruct on a defense theory—that he received property he knew to be stolen but that he did not steal it.

In essence, Valentine contends that he has a right to have the jury instructed on the elements of a crime not charged in order to urge the jury that he is not guilty of the charged offense but that he is guilty of something else. It has never been the law that an accused is entitled to instructions on offenses for which he is not charged in order to urge the jury that he could have been convicted of something other than what is alleged. Although it was the law of this state from 1984 to 1998 that an accused was entitled to have the jury instructed on "lesser related offenses,"[2] the rule was abolished in *People v. Birks, supra,* 19 Cal.4th 108. In *Birks,* our Supreme Court overruled prior decisions holding that the trial court must instruct on a lesser offense related to the charged offense if there is substantial evidence the defendant is guilty only of the lesser. *Birks* concluded that a criminal defendant does not have a right to instructions on, and to urge conviction of, lesser offenses that are not necessarily included in the charge. *Birks* reasoned that permitting a trial court to instruct on lesser related offenses over the objection of the prosecutor would interfere with the prosecutor's "sole discretion to determine whom to charge with public offenses and what charges to bring." (*Id.* at p. 134.)

Valentine would turn *Birks* on its head. Prior to *Birks,* one accused of robbery could offer evidence that he received the proceeds of the robbery

---

[2] *People v. Geiger* (1984) 35 Cal.3d 510 [199 Cal.Rptr. 45, 674 P.2d 1303].

knowing them to be stolen. Thereafter he would be entitled to an instruction on the lesser related offense shown by the evidence to have been committed and urge the jury that he be convicted of that lesser crime. (*People v. Geiger, supra,* 35 Cal.3d at p. 520.) He could not, however, argue for acquittal of both the greater *and* the lesser related offense. Valentine acknowledges that *Birks* overruled *Geiger* and that he is neither entitled to an instruction on a lesser related offense nor to urge his conviction for that offense. Rather, he wants the instruction so that he can argue for an outright acquittal! To paraphrase Winston Churchill, *this is the sort of thing up with which we will not put.*

█ Moreover, the offense of receiving stolen property is not a *defense* to robbery; rather, it is a theory of criminal liability based on a different offense. Thus, the failure to give the instruction did not impinge on Valentine's right to present a defense to robbery. It simply reflected the fact that the prosecutor chose not to file on the other charge. We do not suggest, however, that Valentine could not argue to the jury that his culpability was as one who was in possession of stolen property but not one who committed a robbery.

### *Alleged Reliance on Improper Theory of Law*

Valentine also argues reversal is required because the jury may have relied on an improper theory of law. He asserts the prosecutor made statements in closing argument "telling the jury that [he] would be guilty as an aider and abettor even if he had been a mere spectator to the robbery." Valentine contends the trial court should have reinstructed the jury on aiding and abetting after the prosecutor's closing argument to dispel any confusion the prosecutor's comments may have created in the minds of the jurors. The argument is without merit for at least two reasons.

First, Valentine mischaracterizes the prosecutor's argument. The portion of the closing argument that Valentine finds objectionable concerns the well-established rule that flight immediately after a crime is committed may be considered in determining a defendant's guilt. (CALJIC No. 2.52.) The instruction has nothing to do with aiding and abetting.

■ Moreover, "when the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*People v. Samayoa* (1997) 15 Cal.4th 795, 841 [64 Cal.Rptr.2d 400, 938 P.2d 2].) As noted above, the aiding and abetting instruction given to the jury at the close of the evidence clearly stated the elements required to find a person guilty of robbery. Valentine cites no authority supporting his argument that the trial court was required to repeat the aiding and abetting instruction to the jury after the prosecution's closing argument, and we will not consider it. (*Golden Eagle Ins. Co. v. Insurance Co. of the* West (2002) 99 Cal.App.4th 837, 849 [121 Cal.Rptr.2d 682].)

The judgment is affirmed.

Gilbert, P. J., and Yegan, J., concurred.

A petition for a rehearing was denied October 31, 2006, and appellant's petition for review by the Supreme Court was denied January 24, 2007, S148376. Moreno, J., did not participate therein.