Filed 3/24/21  P. v. Allen CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CLARENCE RAY ALLEN,<br><br>Defendant and Appellant. | F078600<br><br>(Super. Ct. No. F18902213)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  John F. Vogt, Judge.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, R. Todd Marshall and Michael Dolida, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury found appellant Clarence Ray Allen guilty of carjacking (Pen. Code,[1] § 215, subd. (a); count 1), second degree robbery (§ 211; count 2), and assault with a firearm (§ 245, subd. (a)(2); count 5). As to each count, the jury found true that appellant personally used a firearm during the commission of the offense (§§ 12022.53, subd. (b) [counts 1 & 2], 12022.5, subd. (a) [count 5]). Additionally, appellant admitted to suffering a prison prior (§ 667.5, subd. (b)).

As to count 1, appellant was sentenced to the middle term of five years plus 10 years for the firearm enhancement. The court imposed and stayed the middle term of three years plus 10 years for the firearm enhancements as to both counts 2 and 5. The court struck the prison prior enhancement. Appellant's total prison term was 15 years.

On appeal, appellant contends the judgment must be reversed because (1) the court provided the jury with an invalid "alternate theory of guilt" as to the carjacking and robbery counts by instructing them with CALCRIM No. 376, and (2) the court erred by failing to sua sponte instruct the jury on the lesser related offense of receiving stolen property. We affirm.

## FACTS

On March 28, 2018, friends, T.R. and P.G., were chatting inside P.G.'s parked vehicle with the windows open just outside of a public park. T.R. testified she was sitting on the passenger's side, and P.G. was on the driver's side. At around 4:30 p.m., a man with burgundy/reddish colored dreads, wearing a red bandana around his neck and all red clothing, approached the passenger side of the vehicle. T.R. had never seen the man before, but identified him as appellant from a photo lineup shown to her by law enforcement the following day and also identified appellant during trial. Appellant leaned into the vehicle and asked if they had any change. The encounter lasted fewer than five minutes, and appellant left. T.R.'s purse was in the vehicle, which contained

---

[1] All further undesignated statutory references are to the Penal Code.

2.

her ID and other personal items, and her phone was on her lap. The items were visible from where appellant was standing.

After appellant walked away from the vehicle, T.R. observed appellant walk up to another man, who she later identified as Jerry Whitehead from a photo lineup shown to her by law enforcement, and who was wearing a spandex cap, a black shirt, and black shorts.

Whitehead approached the vehicle, asked P.G. if he was from the area, and said he would be back in 15 minutes. He then walked off with appellant. T.R. and P.G. began talking about what had just happened, and before this conversation ended, Whitehead approached the passenger's side of the vehicle and pointed a rifle directly at T.R.'s face. T.R. observed appellant wearing the red bandana and a red shirt on the driver's side of the vehicle pointing a silver handgun at P.G.

P.G. had his hand on the ignition as if he were going to start the vehicle, and appellant told him not to move. P.G. and T.R. were told to exit the vehicle; they complied and went to the sidewalk. T.R. left her purse and phone in the vehicle, and P.G.'s belongings were in the vehicle as well. Appellant got in the driver's seat, Whitehead got into the passenger seat, and they drove off.

On cross-examination, T.R. was presented with footage from law enforcement's body camera taken within an hour of the incident of her explaining what had happened to the investigating officer. In the footage, T.R. tells the officer a man in a red shirt and reddish-brown dyed dreads came up to the vehicle; she saw him leave to talk to another individual, a man in a black shirt with long dreads. The man in black then approached and said they would be back in 15 minutes. T.R. told the officer that the guy with the long dreads came back with another individual about 15 minutes later. T.R. said the guy with the red dreads and red clothing "didn't come back" and that the man with the handgun had dark brown or black dreads and was wearing a mask. After viewing the video, T.R. testified the man with the handgun did not have a mask on and had dreads

3.

with burgundy, reddish-brown tips. T.R. said that when she mentioned the dark brown or black dreads, she was referring to Whitehead, not the man with the handgun. She did not recall telling an officer the man in red never came back.

The day following the incident, a sheriff's deputy was dispatched to respond to an area where P.G.'s vehicle was sighted. Appellant had been observed driving the vehicle and was present at the scene. The deputy performed a search of appellant and found P.G.'s driver's license in his front pocket. He then turned it over to Fresno Police Department personnel.

Fresno Police Department Officer Kham Xiong, lead investigator of the case, testified he reviewed a nearby homeowner's security footage, which showed an area near the scene of the crimes. Xiong identified two subjects at 4:34 p.m.—one wearing blue jean shorts and a black sweater with white stripes with long dreads and another wearing black pants and a red shirt with short collar-length dreads—walking away from where the vehicle was parked but looking back in that direction. The man with the shorter dreads had "short dreads just like [appellant]" and the dreads had a "slight hue of a different color" with "a reddish or maybe like an orange tint." At 4:47 p.m., the subjects appear on the footage again walking toward the vehicle; they were both wearing dark clothing. The subject Xiong believed was appellant was wearing a red bandana around his neck. It appeared to Xiong appellant moved the red bandana to cover the lower part of his face. Xiong did not see an individual dressed in all red in any of the footage he reviewed.

When T.R. was shown the security camera footage during her testimony and it was pointed out to her that the individual she identified as appellant was wearing black when he came back, rather than red as she testified, she stated she was not paying attention to what he was wearing when he came back. She was focused on his red bandana and red dreads and recognized his voice and face.

Xiong testified when the vehicle was recovered, it was searched and a red bandana was found in the sunglass storage area of the vehicle.

Xiong interviewed appellant at police headquarters on March 29, 2018. The interview was recorded and played for the jury. In the interview, appellant denied involvement in the crime and said he was not present at the park when the crimes took place. Appellant stated on the morning of March 28, he asked his friend, Steve William, to borrow his vehicle. Appellant had asked William if the vehicle was stolen, and William responded it was not.

## DISCUSSION

### I. CALCRIM No. 376 as an Invalid "Alternate Theory" of Guilt

The jury was instructed with CALCRIM No. 376, as follows:

> "If you conclude that the defendant knew he possessed property and you conclude that the property had in fact been recently stolen, you may not convict the defendant of Carjacking, charged in Count One or Robbery, charged in Count Two based on those facts alone. However, if you also find that supporting evidence tends to prove his guilt, then you may conclude that the evidence is sufficient to prove he committed Carjacking or Robbery.

> "The supporting evidence need only be slight and need not be enough by itself to prove guilt. You may consider how, where, and when the defendant possessed the property, along with any other relevant circumstances tending to prove his guilt of.

> "Remember that you may not convict the defendant of any crime unless you are convinced that each fact essential to the conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt."

The jury was also given standard instructions on the elements of carjacking (CALCRIM No. 1650) and robbery (CALCRIM No. 1600).

Appellant contends CALCRIM No. 376 created a "legally erroneous" "alternate theory of guilt" for both carjacking and robbery. He argues the instruction allowed the jury to find appellant guilty of carjacking and robbery based upon finding only what he contends are two "elements": (1) that appellant knowingly possessed stolen property;

5.

and (2) that there existed other "supporting evidence" that tended to connect appellant to the crimes. Appellant reasons the phrase in the last sentence of CALCRIM No. 376—"each fact essential to the conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt"—is reasonably interpreted as referring to the two "elements" appellant contends are described in CALCRIM No. 376, not the elements provided in the robbery and carjacking instructions. Therefore, as appellant claims, the instruction creates a "stand-alone theory of guilty—complete with required elements and a burden of proof." According to appellant, this allowed the jury to convict appellant of carjacking and robbery without finding each element of each offense as instructed in CALCRIM Nos. 1650 and 1600 true beyond a reasonable doubt in violation of his Fourteenth Amendment right to due process.

We need not address the merits of appellant's contention because we conclude any error is clearly harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Aledamat* (2019) 8 Cal.5th 1, 11–13.)

Appellant contends the alleged error contributed to the jury's verdict primarily based on his assertion that T.R.'s testimony "did not likely provide proof beyond a reasonable doubt that appellant committed the offenses," but "did provide slight 'supporting evidence' beyond a reasonable doubt that tended to prove appellant's guilt." To support this contention, he points out that T.R.'s testimony was inconsistent and "significantly impeached" and argues a "reasonable juror would not likely find T.R.'s testimony proved beyond a reasonable doubt that appellant committed the robbery and carjacking." Appellant posits for these reasons, "the jury was far more likely to use CALCRIM No. 376, which allowed the jury to convict based on 'slight' evidence, than it was to use CALCRIM Nos. 1600 and 1650, which required proof of the statutory elements beyond a reasonable doubt."

Appellant's argument is belied by the jury's verdict. The jury found unanimously, beyond a reasonable doubt, under properly given instructions not challenged by

6.

appellant, both that appellant was guilty of assault with a firearm and that the allegations he personally used a firearm during the commissions of all charged offenses were true. As the only evidence of appellant using a firearm was T.R.'s testimony, the jury clearly found her testimony sufficient to make these findings. It is therefore highly improbable the jury did not find her testimony sufficient to support their findings on the carjacking and robbery charges beyond a reasonable doubt.

Further, because of the way the evidence was presented at trial, if the jury found unanimously, beyond a reasonable doubt, appellant was the individual wielding the firearm at the crime, it would have been unreasonable for them not to find the individual statutory elements of carjacking and robbery true beyond a reasonable doubt. The primary issue at trial was identity; it was undisputed that P.G.'s vehicle and T.R.'s belongings were taken from them against their will. No evidence or theory was presented to the jury that appellant committed assault with a firearm but did not commit the robbery or carjacking. Rather, the only scenario presented to the jury by the prosecution was that appellant used the firearm to effectuate the carjacking and robbery, and appellant's defense was that he was not the perpetrator of any of the crimes and was not even present at the time and place of the crimes. In other words, if the jury found beyond a reasonable doubt appellant was guilty of assault with a firearm and the firearm enhancements, as they did here, they clearly found beyond a reasonable doubt he was guilty of the carjacking and robbery because, on the facts presented, the crimes were intertwined. If the jury had not been instructed with CALCRIM No. 376, there is no reasonable doubt their verdict would be the same as it was. Any alleged error was harmless.

## II. Trial Court's Failure to Instruct on the Lesser Related Offense of Receiving Stolen Property

Appellant contends the trial court erred when it "refused" to instruct the jury on the lesser related offense of receiving stolen property in violation of appellant's Sixth and

Fourteenth Amendment rights to present a complete defense.[2]  Appellant contends the instruction was paramount to the defense theory of his case, which was that he was not present at the time of the carjacking and robbery and "was potentially guilty only of the uncharged crime of receiving stolen property."

Appellant provides no authority directly supporting his claim that his right to present a defense was implicated by the court's failure to instruct on the crime of receiving stolen property.  Rather, he acknowledges that an argument substantively similar to his has been rejected by the appellate court in *People v. Valentine* (2006) 143 Cal.App.4th 1383 (*Valentine*), which he encourages this court not to follow.

The defendant in *Valentine* was charged with robbery, but argued the evidence at trial showed he committed the uncharged crime of receiving stolen property.  The defendant unsuccessfully urged the trial court to instruct on the uncharged offense in hopes that he could convince the jury he committed the uncharged offense, and they would acquit him of robbery.  (*Valentine*, *supra*, 143 Cal.App.4th at pp. 1385, 1387.)  On

---

[2]     At a jury instruction conference, the court addressed defense counsel stating, "there were no requests for any type of lessers.  Is that still your position?"

The following colloquy occurred:

> "[DEFENSE COUNSEL]:  I probably would ask for an instruction on receiving stolen property.
>
> "THE COURT:  What would it be a lesser of?
>
> "[DEFENSE COUNSEL]:  I guess not robbery, so I'll leave it at that.
>
> "THE COURT:  Okay."

The parties disagree over whether appellant withdrew his request for the instruction based on the above.  While it is clear the trial court interpreted defense counsel's statement as a withdrawal of the request, which we agree was reasonable, we address the merits of appellant's claims because he asserts the trial court had a sua sponte duty to give the instruction and that the error was of a constitutional magnitude.

8.

appeal, the defendant maintained he was entitled to the requested instruction as an explanation of his defense theory that he received stolen property but did not steal it. (*Id.* at p. 1387.) While the defendant acknowledged Supreme Court precedent precluded him from an instruction on the lesser related offense to argue for conviction of the lesser related offense rather than the charged offense, the defendant requested the lesser related instruction so that he could argue for outright *acquittal.* (*Id*. at p. 1388.) The court rejected this argument reasoning it would turn the precedent "on its head" and explained the commission of a lesser related offense is not a true defense to the charged offense and, therefore, the lack of an instruction did not impinge on the defendant's right to present a defense. (*Id*. at pp. 1387–1388.) Rather, "[i]t simply reflected the fact that the prosecutor chose not to file on the other charge." (*Id.* at p. 1388.) The court stated its decision did not preclude the defendant from arguing to the jury that his culpability was as one who was in possession of stolen property but not as one who committed a robbery. (*Ibid*.)

Appellant contends the *Valentine* rule is "unworkable," stating that under *Valentine*, "counsel can present a lesser related offense defense, but the jury should never be instructed how to interpret that defense," rendering "counsel's right to present the defense to the jury… meaningless." Appellant has not convinced us to diverge from our colleagues' holding in *Valentine*. First, we note appellant's frequent use of the word "defense" indicates he misreads *Valentine*. The court in *Valentine* expressly said, "the offense of receiving stolen property is not a *defense* to robbery; rather, it is a theory of criminal liability based on a different offense." (*Valentine*, *supra*, 143 Cal.App.4th at p. 1388; cited with approval in *People v. Jennings* (2010) 50 Cal.4th 616, 668.) We agree with *Valentine* that the commission of an uncharged offense is not a true defense to the charged crime when the commission of the lesser related offense does not necessarily negate an element of the charged offense. (See *Valentine*, at p. 1388.)

Further, just because the jury was not instructed on the elements of a lesser related offense, does not, as the court in *Valentine* clearly states, preclude a defendant from arguing the elements of the charged offense were not proven. Here, defense counsel did so thoroughly.

Appellant's defense was he was not the perpetrator of, nor present during, the commission of the charged crimes. Defense counsel hammered this concept to the jury by: (1) arguing there was no independent evidence presented such as phone calls or text messages showing any connection between appellant and Whitehead; (2) pointing out inconsistencies in Xiong's report and Xiong's failure to follow up with appellant's alibi witnesses; and (3) attacking the inconsistencies in T.R.'s testimony and description of the perpetrators. Defense counsel characterized the case as one of "faulty identification." To explain appellant's possession of the vehicle, defense counsel highlighted appellant's statement that he had borrowed it from another individual. Defense counsel then told the jury: "Now, if you believe that [appellant] at that point knew or reasonably should have known that the car was stolen, that's possession of stolen property … and that's not charged." Defense counsel went on to further highlight there was no evidence of a connection between appellant and Whitehead or the offense.

In context of defense counsel's argument on the whole, by arguing appellant was merely guilty of receiving stolen property, defense counsel was underlining to the jury that, under the defense theory of the case, just because appellant possessed the stolen property the day following the crimes, did not mean he was the perpetrator of the crimes. The jury would reasonably understand from defense counsel's argument that if they accepted appellant's version of events, the proper verdict would be not guilty even though he perhaps was guilty of an uncharged offense by being in possession of the vehicle. This concept was clear, and the jury did not need to be instructed on the elements of receiving stolen property to understand the thrust of appellant's defense.

As stated, we find no reason not to follow *Valentine,* under which appellant's claim fails. In addition, we do not otherwise find the failure to instruct on receiving stolen property implicated appellant's federal Sixth and Fourteenth Amendment rights to a meaningful opportunity to present a complete defense and to adequate instructions on the defense theory of the case. There is no federal constitutional right of a defendant to compel the giving of lesser-related-offense instructions. (*People v. Birks* (1998) 19 Cal.4th 108, 124.) Further, there is no basis to conclude the failure to instruct on receiving stolen property resulted in a fundamentally unfair trial. (See *People v. Rundle* (2008) 43 Cal.4th 76, 148 [the absence of lesser related instruction did not prevent the defendant from presenting his version of events, or from arguing to the jury that he was not guilty of the charged crime such that it could be concluded his trial was fundamentally unfair].)

## DISPOSITION

The judgment is affirmed.


                                                             DE SANTOS, J.
WE CONCUR:


HILL, P.J.


PEÑA, J.

11.