Filed 6/21/24  P. v. Partington CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for
publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication
or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E081100 |
| v. | (Super.Ct.No. INF1901657) |
| DANIEL ADAM PARTINGTON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Dean Benjamini, Judge.

Affirmed as modified, with directions.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant
and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General,

Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Kristen

Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant hit and killed another motorist while fleeing officers in a stolen vehicle. A jury found him guilty of second degree murder and evading police, causing great bodily injury or death, among other offenses.

He appeals the second degree murder conviction because the trial court refused to instruct the jury on gross vehicular manslaughter, a lesser related offense, and barred his attorney from arguing to the jury that he committed the lesser related offense rather than the charged offense. He also argues, and the People concede, the trial court improperly stayed rather than struck a great bodily injury enhancement on the conviction for evading the police, causing great bodily injury or death.

We affirm the second degree murder conviction because criminal defendants are not entitled to instructions on lesser related offenses or to argue to the jury that they are guilty of an uncharged crime. We agree the trial court should have stricken the great bodily injury enhancement and will therefore modify the judgment.

## I

## FACTS

A white 1999 Toyota RAV4 with Texas license plates was stolen twice from an apartment complex over two days in September 2019. The car was easy to steal because the driver's side window did not close completely, and a key was broken off in the ignition. The second time the owner reported the car stolen, the police put the car in the stolen vehicle database.

At 12:19 p.m. on September 12, 2019, a police officer heard from dispatch that the RAV4 had been seen unoccupied and parked on Ocotillo Road. While officers were heading for the vehicle, another report came in that someone, later determined to be appellant and defendant Daniel Adam Partington, was driving the car south on Ocotillo Road. Officers found and followed the car in two patrol cars and confirmed it was the stolen vehicle.

With two patrol cars behind him, Partington signaled to make a right turn onto Palm Drive. A detective driving an unmarked red Ford Fusion pulled in front of the RAV4 to block it. Partington maneuvered his way free, struck the Ford Fusion, and turned right onto Palm Drive, which is a major road through a commercial district. At the time of day these events happened, traffic is moderate to heavy with significant pedestrian traffic.

The two patrol cars and the Fusion pursued Partington, all with their lights and sirens activated. Partington changed lanes multiple times and passed multiple cars, without using his signal, all while increasing in speed. Partington then drove north in the southbound lanes on Palm Drive and passed several cars coming in the other direction. He reached speeds up to 70 to 75 miles an hour in a 35 mile an hour zone.

As Partington approached Pierson Boulevard, the light changed, and another motorist began to cross the intersection. She had just made it past the crosswalk when Partington ran the red light at about 65 miles an hour and broadsided her car. The

3

collision sent the other car off the road and onto the sidewalk, where it struck a pillar and crashed into a palm tree.

Partington got out of the RAV4 and ran west on Pierson Boulevard. Officers chased on foot and tackled Partington after a pedestrian intervened to slow him. As he was being handcuffed, Partington said, "I got a gun." Police found a loaded revolver and a plastic baggy containing 1.833 grams of methamphetamine in his pockets.

The driver of the other vehicle was taken to a hospital, where she was pronounced dead. She had suffered injuries to her brain, lungs, liver, and spleen. Some of the injuries may have been fatal on their own, but the totality of the injuries caused her death. The vehicle Partington stole did not have any mechanical defects that could have contributed to the collision.

Partington told officers he bought the RAV4 for $50 from "some . . . tweaker dude" and assumed it was stolen. He said he got scared when the red car boxed him in at the intersection because he did not know who it was. Partington said he remembered nothing that happened after that, including driving the wrong way on Palm Drive. He said he did not see the police behind him until he crashed. He agreed driving on the wrong side of the road and running a red light were dangerous and could cause serious injuries.

Partington tested positive for methamphetamine and amphetamine. According to a forensic toxicologist, methamphetamine can cause a person to experience euphoria and sped up thought processes. It can also elevate the heart rate, dilate pupils, cause confusion or disorientation, a "heightened sense of well-being or a feeling of invulnerability," as

4

well as difficulty focusing and poor impulse control. Someone under the influence may experience involuntary muscle movements and altered perception of distances and speed. The expert explained she could not tell how the drug was affecting Partington in particular because it affects everyone differently but said Partington's driving was consistent with a person who was under the influence of methamphetamine.

The parties stipulated Partington had been previously convicted of a felony. They also stipulated Partington's mother would testify that, to the best of her knowledge, he had never attended a driver's education class, received any driving instruction, obtained a California Driver's Handbook, or obtained a driver's license. Partington did not otherwise present an affirmative defense.

Defense counsel asked the court to instruct the jury on gross vehicular manslaughter and gross vehicular manslaughter while intoxicated as lesser related offenses. The trial court denied those requests and noted Partington's position had been rejected by the California Supreme Court in *People v. Birks* (1998) 19 Cal.4th 108, 136-137 (*Birks*).

Later, defense counsel asked permission to tell the jury the prosecution could have charged Partington with gross vehicular manslaughter or gross vehicular manslaughter while intoxicated instead of murder, and to discuss how the elements of the two crimes were different. The trial court denied the request because the issue had nothing to do with whether the evidence established the elements of the charged offenses. The court also noted making that argument would invite speculation, risk significant confusion for the

5

jury, and be tantamount to inviting the jury to nullify a substantiated verdict of guilty on the murder charge.

The jury found appellant guilty of second degree murder (Pen. Code, § 187, subd. (a), unlabeled statutory citations refer to this code) with a great bodily injury finding (§ 12022.7, subd. (a)) and evading a peace officer, causing death or serious bodily injury (Veh. Code, § 2800.3, subd. (a) [count 2]) with a great bodily injury enhancement (§ 12022.7, subd. (a)).[1]

In a bifurcated proceeding, the trial court found Partington had a strike prior conviction (§§ 667, subds. (c), (e), & 1170.12, subd. (e)(1)) and a prison prior conviction (§ 667, subd. (a)).

The trial court imposed a sentence of 15 years to life on the second degree murder count, doubled because of the strike prior, and enhanced by five years under section 667, subdivision (a). The court imposed and stayed a sentence on the conviction for causing death or serious injury while evading police, which included a three-year great bodily injury enhancement under section 12022.7. Including sentences on the other counts not

---

[1] Though not relevant to this appeal, the jury also found Partington guilty of hit and run resulting in death or permanent serious injury (Veh. Code, § 20001, subds. (a), (b)(2) [count 3]), possession of a controlled substance while armed with a firearm (Health & Saf. Code, § 11370.1 [count 6]), being a felon in possession of a firearm (§ 29800, subd. (a)(1) [count 7]), vehicle theft (Veh. Code, § 10851, subd. (a) [count 8]), receiving stolen property (§ 496d, subd. (a) [count 9]), driving without a license (Veh. Code, § 12500 [count 10]), and simple possession of a controlled substance (Health & Saf. Code, § 11377 [count 11]). The jury found Partington not guilty of two counts of assault with a deadly weapon (§ 245, subd. (a)(1) [counts 4, 5]) and the lesser offense of simple assault (§ 240).

relevant in this appeal,[2] Partington's aggregate sentence was 35 years to life consecutive to 16 years 4 months in state prison.

## II

## ANALYSIS

A. *Instruction on Gross Vehicular Manslaughter*

Partington argues the trial court erred by refusing his request to instruct the jury on gross vehicular manslaughter in addition to implied malice murder. He argued in the trial court and argues here that the decision violated his due process rights under the federal and California state Constitutions. We review claims of instructional error under the de novo or independent standard. (*People v. Posey* (2004) 32 Cal.4th 193, 218.)

The trial court denied a defense request that the jury be instructed on the uncharged offenses of gross vehicular manslaughter with and without intoxication. Partington does not distinguish between the two forms of gross vehicular manslaughter on appeal. We will discuss both for completeness.

Under California law, gross vehicular manslaughter is defined as "the unlawful killing of a human being without malice" while "[d]riving a vehicle in the commission of an unlawful act, not amounting to a felony, and with gross negligence; or driving a vehicle in the commission of a lawful act which might produce death, in an unlawful

---

[2] The court also imposed the upper term sentence of eight years on count 3, a consecutive two-year sentence on count 6, and a consecutive 16-month sentence on count 8. The court imposed and stayed 16-month sentences on counts 7 and 9. The court also imposed a five-year serious felony enhancement to the determinate term. Finally, the court imposed a 180-day jail term on the misdemeanor conviction in count 10 and a 364-day jail term on the misdemeanor conviction in count 11.

manner, and with gross negligence." (§ 192, subd. (c)(1); see also CALCRIM No. 592.) The offense is a lesser included offense of gross vehicular manslaughter while intoxicated, which requires, in addition to the elements above, proof "the driving was in violation of Section 23140, 23152, or 23153 of the Vehicle Code," which define unlawful use of alcohol and other drugs while operating a vehicle. (§ 191.5, subd. (a); see also CALCRIM No. 590; *People v. Miranda* (1994) 21 Cal.App.4th 1464, 1466-1467 [identifying gross vehicular manslaughter as a lesser included offense].)

Second degree murder "is the unlawful killing of a human being with malice aforethought but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first degree murder." (*People v. Knoller* (2007) 41 Cal.4th 139, 151.) Malice may be express or implied. It is implied when "a person willfully does an act, the natural and probable consequences of which are dangerous to human life, and the person knowingly acts with conscious disregard for the danger to life that the act poses." (*People v. Beltran* (2013) 56 Cal.4th 935, 941-942.)

Gross vehicular manslaughter while intoxicated is a lesser related, but not a lesser included offense of murder. (*People v. Sanchez* (2001) 24 Cal.4th 983, 989-992 (*Sanchez*).) "When we compare the elements of murder with the elements of gross vehicular manslaughter while intoxicated, it appears . . . the statutory elements of murder do not include all the elements of the lesser offense. Gross vehicular manslaughter while intoxicated requires proof of elements that need not be proved when the charge is murder,

8

namely, use of a vehicle and intoxication." (*Id.* at p. 989.) As the parties acknowledge, several decisions of the Courts of Appeal have reached the same conclusion. (*People v. Wolfe* (2018) 20 Cal.App.5th 673; *People v. Bettasso* (2020) 49 Cal.App.5th 1050; *People v. Barooshian* (2024) 101 Cal.App.5th 461.)

The same logic applies to gross vehicular manslaughter without intoxication, which still requires proof the accused used a vehicle in committing the offense. As the *Sanchez* court explained, it does not matter that gross vehicular manslaughter "merely requires proof of a certain *variety* of unlawful killing, and that the essential common element of proof in both manslaughter and murder simply is an unlawful killing." (*Sanchez*, *supra*, 24 Cal.4th at p. 989.) This is so "for the same reason that courts have concluded that assault with a deadly weapon is not an offense necessarily included within the offense of murder. The lesser offense contains crucial elements of proof that are absent from the greater offense, thereby making it *possible* to commit the greater offense without *necessarily* committing the lesser offense." (*Ibid.*, italics added.) That principle applies to gross vehicular manslaughter just as it applies to gross vehicular manslaughter while intoxicated.

California Supreme Court precedent also establishes a defendant has no right under the state Constitution to an instruction on a lesser related offense. (*Birks*, *supra*, 19 Cal.4th at p. 136.) Indeed, the rule is worse for Partington. In *Birks*, the Court held that a trial court *may not* instruct the jury on an uncharged lesser related crime unless the

9

prosecution agrees.[3] (*Ibid*.) The Court reasoned that allowing instructions on uncharged but lesser related offenses would create a tactical imbalance against the prosecution that is "significant and inappropriate." (*Id.* at pp. 128, 134.)

As the Court explained, instructing on lesser *related* offenses differs from instructing on lesser *included* offenses, because there is no guarantee either party will address the elements of an offense that is merely related. "The prosecution assumes the obligation to prove the stated charge and any necessarily *included* offense beyond a reasonable doubt. Thus, at the very least, any conviction of a charged or necessarily included offense is based on evidence adduced by the prosecution in its conscious effort to sustain that heavy burden. [¶] However, the prosecution undertakes *no duty* to prove uncharged, nonincluded offenses, and such proof may well be overlooked in the presentation of the prosecution's case. The defense has no duty to prove any crime by any standard. Thus, and particularly when the prosecution does not consent, the giving of instructions on lesser merely related offenses invites the jury to convict the defendant of a

---

[3] The rule is different for lesser *necessarily included* offenses, which the trial court *must* give whether or not a party makes a request. (*Birks*, *supra*, 19 Cal.4th at p.127 ["We have consistently held that neither party need request [lesser included offense] instructions, *and neither party can preclude them*, because *neither* party has a greater interest than the other in gambling on an inaccurate all-or-nothing verdict when the pleadings and evidence suggest a middle ground, and *neither* party's 'strategy, ignorance, or mistake[]' should open the way to such a verdict"].)

crime that no party may have attempted to establish beyond a reasonable doubt."[4] (*Birks*, *supra*, 19 Cal.4th at p. 132, italics added.)

The United States Supreme Court has reached the same conclusion under federal law. "To allow respondent to be convicted of homicide offenses that are not lesser included offenses of felony murder, therefore, would be to allow his jury to find beyond a reasonable doubt elements that the State had not attempted to prove, and indeed that it had ignored during the course of trial." (*Hopkins v. Reeves* (1998) 524 U.S. 88, 99.) Such a result would be inconsistent with the rule that prosecutors may not hold a defendant to answer a charge not contained in the charging document. (*Schmuck v. United States* (1989) 489 U.S. 705, 717 [rejecting the "inherent relationship" test for identifying lesser *included* offenses because it would allow for convictions under theories not charged or proven by the prosecution].)

These cases would appear to be dispositive, and Partington rightly admits their force. However, he points us to the Court of Appeal decision in *People v. Valentine* (2006) 143 Cal.App.4th 1383 (*Valentine*) as providing a basis to revisit the issue. In *Valentine*, the defendant was charged with robbery, and he defended himself on the theory that he did not participate in the robbery but only received its proceeds. (*Id.* at p. 1386.) Valentine requested an instruction on the lesser related offense of receiving stolen property, putting him in the same position as Partington, arguing "he has a right to

---

[4] The Court also emphasized that requiring the trial courts to instruct juries on offenses the prosecution did not charge poses separation of powers problems, though it ultimately chose not to resolve that question. (*Birks*, *supra*, 19 Cal.4th at p. 135.)

have the jury instructed on the elements of a crime not charged in order to urge the jury that he is not guilty of the charged offense but that he is guilty of something else." (*Id.* at p. 1387.) The trial court refused to instruct the jury on receiving stolen property, and the Court of Appeal affirmed, citing *Birks* as controlling authority holding that a defendant is "neither entitled to an instruction on a lesser related offense nor to urge his conviction for that offense." (*Id.* at p. 1388.)

Valentine argued his case was different because he did not seek to argue for his *conviction* of the uncharged lesser offense. Instead, he sought the instruction on receiving stolen property to argue to the jury that he should be *acquitted* of the charged greater offense on the ground that he had in fact committed only the uncharged lesser related offense. (*Valentine*, *supra*, 143 Cal.App.4th at p. 1388.) The Court of Appeal rejected this argument as well, commenting that "the offense of receiving stolen property is not a *defense* to robbery; rather, it is a theory of criminal liability based on a different offense. Thus, the failure to give the instruction did not impinge on Valentine's right to present a defense to robbery." (*Ibid.*)

The court also commented that Valentine was free to argue he had merely possessed the stolen property but had not committed the robbery. Partington points to this passage as holding that "the defendant is permitted to 'argue to the jury that his culpability was as one who [committed the lesser related offense] but not one who committed [the greater charged offense].' " (Quoting *Valentine*, *supra*, 143 Cal.App.4th at p. 1388 [alterations added by appellant].) He says this is the opening to revisit the issue

12

decided by *Birks*, because it creates the untenable situation where "counsel can present a lesser related offense defense, but the jury should never be instructed how to interpret that defense."

We disagree with his interpretation of *Valentine*. The court did not hold that a defendant is entitled to present a "lesser related offense defense." It expressly held that "the offense of receiving stolen property is not a *defense* to robbery." (*Valentine*, *supra*, 143 Cal.App.4th at p. 1388.) Nor did the court hold a defendant may argue to the jury that his culpability was one who "committed a lesser related offense" but not "the greater charged offense." Here, the bracketed changes to the holding are doing all the work in Partington's argument. What the court in fact wrote is that Valentine could "argue to the jury that his culpability was as one who *was in possession of stolen property* but not one who *committed a robbery*." (*Ibid.*) In other words, Valentine *could* argue he was factually innocent of the robbery charge on the ground that he did not participate in the robbery but only had possession of the stolen property. One way this could play out would be to argue the prosecution had established through proof only that Valentine had possession of the stolen property and argue that evidence was insufficient to tie him to commission of the robbery itself. There is no need for defense counsel to introduce the complication that the evidence would have supported a conviction for a lesser related offense had the prosecution charged him with it.

We therefore disagree with Partington's argument that "[w]ithout an instruction defining the lesser related offense, counsel's right to present the defense to the jury is

13

meaningless." The *Valentine* court followed *Birks* in holding a defendant is not entitled to have a jury instructed on an uncharged lesser related offense, but allowed that a defendant may nevertheless argue he is not guilty of the charged greater offense because the evidence did not establish the elements of that crime. In this case, Partington could have argued his level of culpability did not rise to the level necessary to establish implied malice murder—that he did not knowingly act with conscious disregard for human life. In fact, Partington's counsel *did* make that argument. Counsel was able to make that argument without an instruction on gross vehicular manslaughter and without pointing out that the prosecutor could have charged him with that offense.

B. *Right to Present a Defense*

Partington also argues the trial court erred by denying his counsel the ability to argue he *was* guilty of gross vehicular manslaughter, though not implied malice murder. He argues that "defense is much stronger than simply arguing innocence and asking for an outright acquittal because appellant's theory admitted that he was criminally responsible for the death of the victim, but that his culpability was commensurate with gross vehicular manslaughter and not implied malice murder." He argues this decision violated his right to due process under the Fifth Amendment and his right to counsel under the Sixth Amendment of the federal Constitution, both incorporated under the Fourteenth Amendment.

Partington's Sixth Amendment argument relies on *People v. Whisenhunt* (2008) 44 Cal.4th 174 (*Whisenhunt*) and *People v. Schmeck* (2005) 37 Cal.4th 240 (*Schmeck*),

14

but these cases cut against him. In *Whisenhunt*, the defendant was charged with first degree murder of his girlfriend's young child. (*Whisenhunt*, at p. 181.) Defense counsel asked the trial court to instruct the jury on the uncharged offense of being an accessory after the fact based on the defendant's testimony that his girlfriend had caused the child's injuries and he lied to police officers to protect her. (*Id.* at p. 212.) The defendant argued the refusal to give the accessory instruction "denied him a constitutionally adequate opportunity to present a defense because an accessory instruction was 'part and parcel' of the defense theory of the case." The Supreme Court rejected this argument and noted the accessory instruction "was not essential to defendant's defense" because "the jury was fully apprised of the defense theories that it was [the girlfriend] rather than defendant who caused [the child's] fatal injuries and that defendant lied in order to protect [his girlfriend]." (*Id.* at p. 213.)

*Schmeck* was nearly identical. Defendant claimed the trial court erred by failing to instruct the jury on the crime of being an accessory after the fact. The Supreme Court noted "a trial court has no duty to instruct on an uncharged lesser related offense when requested to do so by the defendant [citation] and, therefore, it is clear that the trial court did not err in failing sua sponte to so instruct on that point." (*Schmeck*, *supra*, 37 Cal.4th at p. 292.) The Court also rejected his contention that he had been "deprived of an adequate opportunity to present his defense" because "[t]he jury fully was apprised of the theory of the defense through defendant's statement to the police, the defense's impeachment of prosecution witnesses, and defense counsel's closing argument." (*Ibid.*)

15

These Supreme Court cases do not establish a defendant's right to present a defense includes the right to argue he was guilty of a lesser related offense. They establish it is enough for counsel to be permitted to present evidence related to the defense theory and argue the evidence establishes factual innocence or the prosecution's failure to carry their burden of proof on an element of the charged offenses. In *Whisenhunt* and *Schmeck*, the defendants presented evidence that they had not committed the killings and had lied about the events afterward only to protect the people who were the killers. Thus, they could argue their defense theory based on the evidence and without referring to the uncharged offense of being an accessory after the fact. Here, Partington's counsel was able to argue he did not knowingly act in conscious disregard for human life without referring to the uncharged offenses of gross vehicular manslaughter and gross vehicular manslaughter while intoxicated.

Partington's argument that disallowing argument that he could have been charged and convicted of a lesser related offense denied his due process rights fails for the same reasons. He cites several cases emphasizing the importance of a defendant's right to "present the defense theory of the case." However, none of them involves a requested instruction on a lesser related offense, and none of them suggests that presenting an alternative uncharged offense is a defense or that denying an instruction on a lesser related offense interferes with a defendant's ability to present their defense theory. Accordingly, we affirm the second degree murder conviction.

C. *Great Bodily Injury Enhancement of Evading a Police Officer Sentence*

Partington argues the trial court erred by imposing (and staying) the three-year great bodily injury enhancement (§ 12022.7, subd. (g)) on his conviction for proximately causing death or serious bodily injury while intentionally evading a pursuing peace officer (Veh. Code, § 2800.3). The People concede this was error.

Section 12022.7, subdivision (a) provides for a three-year enhancement when a defendant personally inflicts great bodily injury on a person other than an accomplice in committing a felony or attempted felony. However, the statute directs the enhancement "shall not apply if infliction of great bodily injury is an element of the offense." (§ 12022.7, subd. (g).) Vehicle Code section 2800.3 imposes criminal liability for proximately causing "serious bodily injury."

*People v. Beltran* (2000) 82 Cal.App.4th 693, 696-697 (*Beltran*) held a section 12022.7 enhancement cannot be applied to a conviction for violating Vehicle Code section 2800.3 because the terms "serious bodily injury" in the Vehicle Code and "great bodily injury" in section 12022.7 have "substantially the same meaning." (*Beltran*, at p. 696; see also *People v. Hawkins* (1993) 15 Cal.App.4th 1373, 1375-1376 [holding section 12022.7 enhancement cannot be applied to a conviction for battery causing serious bodily injury].) Section 2800.3, subdivision (d) defines "serious bodily injury" by reference to the battery statute, which says it "means a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a

17

wound requiring extensive suturing; and serious disfigurement." (§ 243, subd. (f)(4).) The enhancement statute defines "great bodily injury" more generally to mean "a significant or substantial physical injury." (§ 12022.7, subd. (f).)

In a case that might seem to be in tension with *Beltran*, our Supreme Court recently emphasized "serious bodily injury and great bodily injury are not interchangeable." (*In re Cabrera* (2023) 14 Cal.5th 476, 485 (*Cabrera*).) But *Cabrera* was about the constitutional right to a jury under *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*). It does not call into question *Beltran*'s statutory interpretation.

In *Cabrera*, the defendant was charged with assault by means of force likely to produce great bodily injury and battery with serious bodily injury. The jury found the defendant had inflicted serious bodily injury, but it deadlocked on whether he inflicted great bodily injury, resulting in a mistrial on that charge. (*Cabrera*, *supra*, 14 Cal.5th at p. 482.) In sentencing the defendant, however, the trial court found the defendant had committed "serious felonies" warranting a five-year enhancement, on the ground that the jury's serious bodily injury finding established the crimes involved inflicting great bodily injury. (*Ibid*.) The Supreme Court reversed because in the specific context of *Apprendi*, the "[n]ear equivalence does not mean that a finding of serious bodily injury necessarily entails great bodily injury.'" (*Cabrera*, at p. 492.) The import of *Cabrera* is that a jury finding of "serious bodily injury" does not authorize a court to sentence a defendant to increased punishment for "great bodily injury" based on judicially found facts.

Here, in contrast, the jury found both serious bodily injury (in convicting Partington of evading a peace officer and causing such injury) and great bodily injury (in imposing an enhancement to that offense). There is no *Apprendi* concern with imposing sentences for these findings, as they were made by a jury. The concern is whether a statute forbids a court from applying *both*. *Beltran*'s conclusion that the two terms have "substantially the same meaning" (*Beltran*, *supra*, 82 Cal.App.4th at p. 696) can suffice to show that a statute precludes punishment for both, even if being substantially similar does not make them interchangeable for purposes of the constitutional jury right under *Apprendi.*

Accordingly, the Supreme Court in *Cabrera* noted its holding "does not call into question our assertion . . . that serious bodily injury and great bodily injury are ' "essentially equivalent elements." ' " (*Cabrera*, *supra*, 14 Cal.5th at p. 490.) And it withheld any opinion "on cases that have relied on that assertion in other contexts." Citing *Beltran*, it noted "the Courts of Appeal have long construed Penal Code section 12022.7, subdivision (g)'s bar on imposing the great bodily injury enhancement when 'infliction of great bodily injury is an element of the offense' to mean that the enhancement may not be imposed where serious bodily injury is an element of the underlying offense." (*Ibid.*) The Court noted it may be sufficient for serious bodily injury and great bodily injury to be substantially the same for the purpose of applying section 12022.7, even though "more is required to satisfy *Apprendi*'s strict allocation of roles between judge and jury under the Sixth Amendment." (*Cabrera*, at p. 491.)

19

Consistent with the People's concession, we will follow *Beltran* and strike the enhancement.

## III

## DISPOSITION

We modify the judgment to strike the enhancement on count 2 imposed under section 12022.7 and direct the trial court to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. Otherwise, we affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL_____
J.

We concur:

McKINSTER_____
Acting P. J.

MENETREZ_____
J.